1  CALEB R. TROTTER, Cal. Bar No. 305195
2  Email: CTrotter@pacificlegal.org
   Pacific Legal Foundation
3  930 G Street
4  Sacramento, California 95814
   Telephone: (916) 419-7111
5  Facsimile: (916) 419-7747
6  JAMES M. MANLEY, Ariz. Bar No. 031820*
   Email: JManley@pacificlegal.org
7  Pacific Legal Foundation
8  3217 E. Shea Blvd. # 108
9  Phoenix, Arizona 85028
   Telephone: (916) 419-7111
10 Facsimile: (916) 419-7747
11 *Pro Hac Vice Pending
12 *Attorneys for Plaintiffs American Society of Journalists and Authors, Inc.,*
13 *and National Press Photographers Association*

14              UNITED STATES DISTRICT COURT
15              CENTRAL DISTRICT OF CALIFORNIA
16                     WESTERN DIVISION

17 
18 AMERICAN SOCIETY OF            )   Case No.: 2:19-cv-10645
   JOURNALISTS AND AUTHORS,       )
19 INC., and NATIONAL PRESS       )   **COMPLAINT FOR VIOLATION**
20 PHOTOGRAPHERS ASSOCIATION,     )   **OF FEDERAL CIVIL RIGHTS**
                                  )   **UNDER 42 U.S.C. § 1983**
21        Plaintiffs,             )   **DECLARATORY AND**
22     v.                         )   **INJUNCTIVE RELIEF**
                                  )
23 XAVIER BECERRA, in his official )
   capacity as Attorney General of the )
24 State of California,           )
                                  )
25        Defendant.              )
26                                )
27 

28 
   Complaint for Violation of Federal Civil        - 1 -           Case No. 2:19-cv-10645
   Rights Under 42 U.S.C. § 1983 Declaratory
   and Injunctive Relief

On behalf of their members, Plaintiffs American Society of Journalists and Authors (ASJA) and the National Press Photographers Association (NPPA), by and through their undersigned attorneys, file this Complaint against Defendant and allege as follows:

## INTRODUCTION

1. This civil rights lawsuit seeks to vindicate the constitutional rights to free speech, the press, and equal protection for the members of Plaintiffs American Society of Journalists and Authors and the National Press Photographers Association.

2. ASJA and the NPPA are two of the leading voices advocating for the rights of independent contractor (freelance) writers and visual journalists in the United States.

3. As a result of a recently enacted California law (AB 5, codified at Cal. Labor Code § 2750.3, *et seq*.), the constitutional rights of ASJA's and NPPA's members are impaired, threatening the livelihood of those who work as freelancers.

4. The government faces a heavy burden of justification when its regulations single out the press. *Minneapolis Star & Tribune Co. v. Minnesota Comm'r of Revenue*, 460 U.S. 575, 583 (1983).

5. In violation of the First and Fourteenth Amendments to the United States Constitution, AB 5 singles out ASJA's and NPPA's members who are writers, editors, still photographers, and visual journalists by drawing unconstitutional content-based distinctions about who can freelance—limiting certain speakers to 35 submissions per client, per year, and precluding some freelancers from making video recordings.

6. As a result, ASJA and NPPA seek prospective relief for their members in the form of a declaration that the challenged provisions of AB 5 are invalid, unenforceable, and void; a permanent and preliminary injunction against any further enforcement of the challenged provisions; plus costs and reasonable attorney fees,

pursuant to 42 U.S.C. § 1988. ASJA and NPPA do not seek money damages against Defendant.

## JURISDICTION AND VENUE

7. ASJA and NPPA bring this lawsuit on behalf of their members pursuant to 42 U.S.C. § 1983 for the violation of rights secured by the First and Fourteenth Amendments to the United States Constitution.

8. Jurisdiction over ASJA's and NPPA's claims for declaratory and injunctive relief is proper under 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights), and 2201–2202 (Declaratory Judgment Act).

9. Venue is proper in this Court under 28 U.S.C § 1391(b) on the ground that all or a substantial part of the acts giving rise to ASJA's or NPPA's claims occurred in the Central District of California.

## PARTIES

Plaintiffs

10. ASJA was founded in 1948 and is the nation's largest professional organization of independent nonfiction writers. Its membership consists of freelance writers of magazine articles, trade books, and many other forms of nonfiction writing, each of whom has met exacting standards of professional achievement.

11. ASJA has approximately 120 members in California.

12. Chartered in 1946, NPPA is the nation's leading professional organization for visual journalists. Its membership includes visual journalists who are still photographers, videographers, multimedia journalists, editors and students from print, television, and electronic media.

13. NPPA has 536 members in California.

14. NPPA advocates in support of visual journalists' First Amendment rights to report on news and matters of public concern as well as protect the copyright of their images.

15. The term "photojournalist" is used throughout this Complaint to track

with the language of AB 5, as well as the synonymous "visual journalist." Within the journalism profession, the term photojournalist means any visual journalist, including news photographers, videographers, and multimedia journalists who shoot either still or video images.

<u>Defendant</u>

16. Defendant Xavier Becerra is the Attorney General of California and the chief law officer of the state. *See* Cal. Gov. Code § 12511. AB 5 grants Mr. Becerra specific authority to enforce the provisions of AB 5 complained of in this action. Cal. Labor Code § 2750.3(j). Plaintiffs are informed and believe, and on that basis allege, that Mr. Becerra also has ultimate responsibility for enforcing AB 5. Defendant is being sued in his official capacity, pursuant to *Ex parte Young*, 209 U.S. 123 (1908), for depriving Plaintiffs' members of their First and Fourteenth Amendment rights under color of state law by enforcing AB 5.

## FACTUAL ALLEGATIONS
## I
## LEGAL FRAMEWORK
### *Dynamex* ABC Test

17. Plaintiffs incorporate and reallege each and every allegation in the preceding paragraphs of this Complaint.

18. California recently enacted Assembly Bill 5 (AB 5, codified at Cal. Labor Code § 2750.3, *et seq*.). AB 5 codifies and expands the independent contractor test established in *Dynamex Operations West, Inc. v. Superior Court of Los Angeles*, 4 Cal. 5th 903 (2018).

19. Under *Dynamex*, independent contractors must be classified as employees under certain California wage orders unless the hiring entity satisfies a new three-part test:

> (A) that the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for

> the performance of the work and in fact, (B) that the worker performs work that is outside the usual course of the hiring entity's business, and (C) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed for the hiring entity.

*Id.* at 964. *See also* Cal. Labor Code § 2750.3(a)(1).

20. Failure to prove any element of the *Dynamex* ABC test results in the independent contractor being classified as an employee.

21. The *Dynamex* ABC test overruled a prior multi-factor balancing test that considered the economic realities of the employment relationship. *See S. G. Borello & Sons, Inc. v. Department of Industrial Relations*, 48 Cal. 3d 341 (1989).

22. Under *Borello*, freelancers like Plaintiffs' members represented here are classified as independent contractors and have been for decades.

23. *Dynamex* was limited to the "suffer or permit to work" standard in California wage orders and "equivalent or overlapping non-wage order allegations arising under the Labor Code." *Gonzales v. San Gabriel Transit, Inc.*, 2019 WL 4942213, *14 (Cal. Ct. App. Oct. 8, 2019). Wage orders govern issues like minimum wage, overtime pay, meals, and lodging. Professionals engaged in "original and creative" work, like Plaintiffs' members, are largely exempt from wage orders, and thus *Dynamex* had little direct effect on their work.

## AB 5

24. AB 5 applies the strict *Dynamex* ABC test to the entire Labor Code, the Unemployment Insurance Code, and wage orders. Cal. Labor Code § 2750.3(a)(1).

25. AB 5's expansion of the ABC test means that freelancers like the writers, editors, photographers, and videographers who comprise Plaintiffs' memberships must be classified as employees of the publishers for which they produce content because content creation is "the usual course of the hiring entity's business." Cal. Labor Code § 2750.3(a)(1)(B).

26. AB 5 also contains a number of exemptions to the ABC test, including

people who work pursuant to "a contract for 'professional services.'" Cal. Labor Code § 2750.3(c)(1). These exempt professionals remain subject to the existing *Borello* independent contractor test.

27. AB 5 defines "professional services" as those provided by marketers, human resources administrators, travel agents, graphic designers, grant writers, fine artists, IRS enrolled agents, payment processing agents through an independent sales organization, estheticians, electrologists, manicurists, barbers, and cosmetologists. Cal. Labor Code § 2750.3(c)(2)(B)(i)—(viii), (xi).

28. Still photographers, photojournalists, freelance writers, editors, and newspaper cartoonists are also included in "professional services," but with important limitations: (1) these speaking professions are limited to 35 "content submissions" per client, per year, Cal. Labor Code § 2750.3(c)(2)(B)(ix) and (x); and (2) video is expressly excluded from the still photography and photojournalism exemption. Cal. Labor Code § 2750.3(c)(2)(B)(ix).

29. AB 5 does not exclude audio recording from the definition of professional services.

30. The 35-submission cap in Cal. Labor Code § 2750.3(c)(2)(B)(ix) and (x) limits freelancers' ability to record, sell, or publish audio content.

31. The 35-submission cap in Cal. Labor Code § 2750.3(c)(2)(B)(x) only applies to "items or forms of content by a freelance journalist" that meet the other requirements of § 2750.3(c)(2)(B)(x).

32. ASJA's membership includes freelance writers and editors who are covered under AB 5's "professional services" exemption but subject to the limit of 35 content submissions per client, per year.

33. NPPA's membership includes still photographers and photojournalists who are covered under AB 5's "professional services" exemption but subject to the limit of 35 content submissions per client, per year. NPPA's membership also

includes videographers who are excluded from AB 5's definition of "professional services."

34. AB 5 grants specific enforcement authority to Defendant "[i]n addition to any other remedies available," to bring an action for injunctive relief. Cal. Labor Code § 2750.3(j). This new enforcement authority means that Plaintiffs' members who wish to work independently can still be forced to become employees due to Defendant's enforcement of AB 5.

## II
## AB 5 HARMS PLAINTIFFS' MEMBERS BY SINGLING OUT FREELANCE JOURNALISTS FOR UNIQUE AND SIGNIFICANT BURDENS

35. Plaintiffs incorporate and reallege each and every allegation in the preceding paragraphs of this Complaint.

36. Classifying Plaintiffs' members as employees rather than freelance independent contractors brings significant new costs and disadvantages to the members. For professionals engaged in "original and creative" work, AB 5 adds costs their client-turned-employer will have to pay, such as unemployment taxes[1], workers' compensation taxes[2], state disability insurance[3], paid family leave[4], and sick leave.[5] Some of these costs are borne by an employer, but they all make Plaintiffs' members' work more costly—and thus less attractive—to the client-turned-employer. The additional burden on Plaintiffs' members' ability to engage in independent journalism is a direct result of their classification as employees under AB 5's "usual course of the hiring entity's business" prong. Cal. Labor Code § 2750.3(a)(1)(B).

---

[1] Cal. Un. Ins. Code § 1251.
[2] Cal. Labor Code § 3600.
[3] Cal. Un. Ins. Code § 2625.
[4] Cal. Un. Ins. Code § 3303.
[5] Cal. Labor Code § 246.

37. The threat of enforcement has already resulted in lost freelancing opportunities for Plaintiffs' members.

38. In addition to these unavoidable costs of converting freelancers to employees, Plaintiffs' members who are forced to become employees because of AB 5 will also lose ownership of the copyright to their creative work and control of their workload unless they are able to negotiate to retain that right.

39. Ownership of the copyright of their work is especially pressing for NPPA's members, who license their photographs and videos to their clients, but often retain the copyright to such work, which they can then relicense for additional income. Under the Copyright Act, the copyright in a work created by an independent contractor vests with the creator. *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989). However, the copyright in a work created by an employee is usually owned by the employer, unless the employee is able to negotiate to retain that right.

40. ASJA's members similarly benefit substantially from the ability to republish work that they create as freelance independent contractors.

41. Freelance journalists who are forced to become employees due to AB 5 will lose the copyright to their work.

42. Control over their workload is also a primary concern for Plaintiffs' members, and is what leads many of them to make the choice to work independently.

43. In a tumultuous industry that continues to lay off employees, Plaintiffs' members find safety in flexibility. Rather than being tied to a single employer, Plaintiffs' members are able to adapt their workload to their financial needs, balance their work with their other responsibilities, and spread their workload across multiple clients to minimize risk.

44. That flexibility even extends to business decisions, such as the choice to attend a conference or event.

45. In addition, Plaintiffs' members can deduct business expenses on their federal taxes for numerous expenses, including professional memberships,

1 educational and networking conferences, travel, equipment, home offices, insurance, and other expenses, which an employee is not able to deduct.

46. They are also able to maintain benefits like healthcare and retirement accounts, regardless of the number of publishers they produce content for or the frequency and quantity of their work.

47. Flexibility is even more important in the digital space which, unlike the traditional print model, allows for a higher volume of submissions to a greater variety of publications.

48. Losing the freedom to freelance would upend years-long careers of Plaintiffs' members which are built on this freedom and flexibility.

49. AB 5 is especially threatening to groups that are not well-represented among voices in the media like women, ethnic minorities, LGBT people, the disabled, and the elderly, because members of these groups work more often as freelancers rather than staff employees.

50. By enforcing content-based distinctions about who can freelance—limiting certain speakers to 35 submissions per client, per year, and precluding some freelancers from making video recordings—Defendant currently maintains and actively enforces a set of laws, practices, policies, and procedures under color of state law that deprive Plaintiffs' members of their rights to free speech, free press, and equal protection, in violation of the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

51. Plaintiffs have no adequate remedy at law to compensate for the loss of these fundamental freedoms and will suffer irreparable injury absent an injunction restraining Defendant's enforcement of the 35-submission limit and the video recording restrictions.

52. Plaintiffs are therefore entitled to prospective declaratory and permanent injunctive relief against continued enforcement and maintenance of Cal. Labor Code § 2750.3(c)(2)(B)(ix) and (x). *See* 28 U.S.C. §§ 2201, 2202.

# LEGAL CLAIMS
## Count I: Equal Protection
### (Cal. Labor Code § 2750.3(c)(2)(B)(ix) and (x))
### (Limit of 35 content submissions)

53. Plaintiffs incorporate and reallege each and every allegation in the preceding paragraphs of this Complaint.

54. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits the government from drawing arbitrary distinctions between similarly situated professionals. *See* U.S. Const. amend. XIV, § 1.

55. Granting a full exemption from AB 5 to speaking professionals who engage in marketing, graphic design, grant writing, and fine arts, but subjecting speaking professionals like Plaintiffs' members who are still photographers, photojournalists, freelance writers, and editors, to a limit of 35 content submissions per publisher per year, creates an irrational and arbitrary distinction among speaking professionals.

56. By enforcing the irrational and arbitrary distinction among speaking professionals, Defendant, acting under color of state law, irrationally and arbitrarily discriminates against Plaintiffs' members in violation of their right to equal protection of the laws.

57. Privileging marketers, graphic designers, grant writers, and fine artists by providing those speaking professions with an exemption from AB 5, while limiting still photographers, photojournalists, freelance writers, and editors to an exemption of only 35 submissions per publisher per year, is not narrowly tailored to any compelling government objective, nor is it rationally related to any legitimate government objective.

58. Plaintiffs' members who are still photographers, photojournalists, freelance writers, and editors are similarly situated to speaking professionals not subject to the 35-submission limit of AB 5.

59. Plaintiffs' members will suffer substantial and ongoing harm from being subject to Defendant's enforcement of the 35-submission limit while other similarly situated speaking professionals are not.

60. Plaintiffs' members will continue to suffer substantial and irreparable harm unless the discrimination enshrined in AB 5's selective and arbitrary imposition of the 35-submission limit is declared unlawful and enjoined by this Court.

## Count II: Equal Protection
### (Cal. Labor Code § 2750.3(c)(2)(B)(ix))
### (Exclusion of videography)

61. Plaintiffs incorporate and reallege each and every allegation in paragraphs 1–52 of this Complaint.

62. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits the government from drawing arbitrary distinctions between similarly situated professionals. *See* U.S. Const. amend. XIV, § 1.

63. Permitting marketers, graphic designers, grant writers, and fine artists to record video images, but excluding the recording of video images from the limited exemption for photographers and photojournalists, creates an irrational and arbitrary distinction among speaking professionals.

64. By enforcing the irrational and arbitrary distinction among speaking professionals, Defendant, acting under color of state law, irrationally and arbitrarily discriminates against Plaintiffs' members in violation of their right to equal protection of the laws.

65. Privileging marketers, graphic designers, grant writers, and fine artists by permitting them to record video images and remain exempt from AB 5, while providing no exemption to photographers and photojournalists who record video, is not narrowly tailored to any compelling government objective, nor is it rationally

related to any legitimate government objective.

66. Exempting still photographers and photojournalists for up to 35 submissions of still photographs per publisher per year, but providing no exemption to photographers and photojournalists who record video images, creates an irrational and arbitrary distinction between those individuals and others who provide professional services under AB5's exemptions.

67. By enforcing the irrational and arbitrary distinction among photographers and photojournalists, Defendant, acting under color of state law, irrationally and arbitrarily discriminates against Plaintiffs' members in violation of their right to equal protection of the laws.

68. Privileging still photographers and photojournalists who submit still photographs by allowing them to submit up to 35 submissions per publisher per year while remaining exempt from AB 5, while providing no exemption to those recording video, is not narrowly tailored to any compelling government objective, nor is it rationally related to any legitimate government objective.

69. Plaintiffs' members who are photographers and photojournalists that record video are similarly situated to marketers, graphic designers, grant writers, and fine artists who record video images.

70. Plaintiffs' members who are photographers and photojournalists that record video are similarly situated to those who are still photographers and photojournalists that do not shoot video.

71. Plaintiffs' members will suffer substantial and ongoing harm from being subject to Defendant's enforcement of the exclusion of video recordings by photographers and photojournalists from AB 5's exemptions.

72. Plaintiffs' members will continue to suffer substantial and irreparable harm unless the discrimination enshrined in AB 5's selective and arbitrary imposition of the exclusion of video recordings by photographers and

photojournalists from AB 5's exemptions is declared unlawful and enjoined by this Court.

### Count III: First Amendment
### (Cal. Labor Code § 2750.3(c)(2)(B)(ix) and (x))
### (Limit of 35 content submissions)

73. Plaintiffs incorporate and reallege each and every allegation in paragraphs 1–52 of this Complaint.

74. Pursuant to Cal. Labor Code § 2750.3(c)(2)(B)(ix) and (x), Defendant, acting under color of state law, limits AB 5's exemption for "professional services" as applied to speaking professionals who engage in still photography, photojournalism, freelance writing, and editing to only 35 content submissions per publisher per year. In contrast, AB 5 grants an exemption free from the 35-submission limit to speaking professionals who engage in marketing, graphic design, grant writing, and fine arts.

75. The 35-submission limit applies to Plaintiffs' members based on the content of their speech—i.e., whether they write about or photograph a topic in a manner that constitutes marketing versus a manner that constitutes journalistic reporting, or whether images are graphic design versus still photography.

76. Limiting AB 5's exemption for "professional services" as applied to speaking professionals who engage in still photography, photojournalism, freelance writing, and editing to only 35 content submissions per publisher per year, while granting an exemption free from the 35-submission limit to speaking professionals who engage in marketing, graphic design, grant writing, and fine arts is not narrowly tailored to a compelling governmental interest.

77. Under the AB 5 scheme, journalistic speech is expressly disfavored.

78. By enforcing the 35-submission limit, Defendant, acting under color of state law, unconstitutionally deprives Plaintiffs' members of their freedom of speech as protected by the First and Fourteenth Amendments to the U.S. Constitution.

79. By enforcing the 35-submission limit, Defendant, acting under color of state law, unconstitutionally burdens the press in violation of the First and Fourteenth Amendments to the U.S. Constitution, because many of Plaintiffs' members are journalists.

80. Plaintiffs' members will suffer substantial and ongoing harm from being subject to Defendant's enforcement of the 35-submission limit.

81. Plaintiffs' members will continue to suffer substantial and irreparable harm unless the speech- and press-burdening 35-submission limit is declared unlawful and enjoined by this Court.

## Count IV: First Amendment
## (Cal. Labor Code § 2750.3(c)(2)(B)(ix))
## (Exclusion of videography)

82. Plaintiffs incorporate and reallege each and every allegation in paragraphs 1–52 of this Complaint.

83. Pursuant to Cal. Labor Code § 2750.3(c)(2)(B)(ix), Defendant, acting under color of state law, excludes from AB 5's exemption for "professional services" the recording of video images by photographers and photojournalists. In contrast, the recording of video images for marketing, graphic design, and fine arts is not excluded.

84. The exclusion of video recording from the "professional services" exemption applies to Plaintiffs' members based on the content of their speech—i.e., whether they record video to communicate news versus expression that is deemed marketing.

85. Excluding video recording by photographers and photojournalists from AB 5's "professional services" exemption is not narrowly tailored to a compelling government interest.

86. Under the AB 5 scheme, journalistic speech is expressly disfavored.

87. By enforcing the video recording exclusion for photographers and

photojournalists, Defendant, acting under color of state law, unconstitutionally deprives Plaintiffs' members of their freedom of speech as protected by the First and Fourteenth Amendments to the U.S. Constitution.

88.   By enforcing the video recording exclusion for photographers and photojournalists, Defendant, acting under color of state law, unconstitutionally burdens the press in violation of the First and Fourteenth Amendments to the U.S. Constitution, because many of Plaintiffs' members are journalists.

89.   Plaintiffs' members will suffer substantial and ongoing harm from being subject to Defendant's enforcement of the video recording exclusion for photographers and photojournalists.

90.   Plaintiffs' members will continue to suffer substantial and irreparable harm unless the speech- and press-burdening video recording exclusion for photographers and photojournalists is declared unlawful and enjoined by this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

1.   Entry of a declaratory judgment that:

a.   Limiting AB 5's "professional services" exemption for still photographers, photojournalists, freelance writers, editors, and newspaper cartoonists to 35 submissions per publisher per year, as codified at Cal. Labor Code § 2750.3(c)(2)(B)(ix) and (x), is unconstitutional, facially and as applied to Plaintiffs' members, to the extent that it deprives Plaintiffs' members of equal protection of the laws in violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution;

b.   Excluding photographers and photojournalists who record video images from AB 5's "professional services" exemption, as codified at Cal. Labor Code § 2750.3(c)(2)(B)(ix), is unconstitutional, facially and as applied to Plaintiffs' members, to the extent that it deprives Plaintiffs' members of equal protection of the

laws in violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution;

   c. Limiting AB 5's "professional services" exemption for still photographers, photojournalists, freelance writers, editors, and newspaper cartoonists to 35 submissions per publisher per year, as codified at Cal. Labor Code § 2750.3(c)(2)(B)(ix) and (x), is unconstitutional, facially and as applied to Plaintiffs' members, to the extent that it burdens protected speech and the press in violation of the First and Fourteenth Amendments to the U.S. Constitution;

   d. Excluding photographers and photojournalists who record video images from AB 5's "professional services" exemption, as codified at Cal. Labor Code § 2750.3(c)(2)(B)(ix), is unconstitutional, facially and as applied to Plaintiffs' members, to the extent that it burdens protected speech and the press in violation of the First and Fourteenth Amendments to the U.S. Constitution;

  2. Entry of a permanent and preliminary injunction against Defendant, his agents, representatives, employees, and all persons in active concert or participation with him, from enforcing the 35-submission limit and video recording exclusion codified at Cal. Labor Code § 2750.3(c)(2)(B)(ix) and (x), as well as any and all implementing administrative rules and regulations, and the policies and practices by which Defendant enforces these provisions;

  3. An award of Plaintiffs' attorney fees, costs, and expenses in this action pursuant to 42 U.S.C. § 1988; and

///
///
///
///
///
///
///

4. An award of any further legal and equitable relief as the Court may deem just and proper.

DATED: December 17, 2019.

Respectfully submitted,

By   /s/ Caleb R. Trotter
      CALEB R. TROTTER

CALEB R. TROTTER
(Cal. Bar No. 305195)
Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747
Email: CTrotter@pacificlegal.org

JAMES M. MANLEY
(Ariz. Bar No. 031820*)
Pacific Legal Foundation
3241 E. Shea Blvd. #108
Phoenix, Arizona 85028
Telephone: (916) 419-7111
Facsimile: (916) 419-7747
Email: JManley@pacificlegal.org
*Pro Hac Vice pending

*Attorneys for Plaintiffs American Society of Journalists and Authors, Inc., and National Press Photographers Association*