CALEB R. TROTTER, Cal. Bar No. 305195
Email: CTrotter@pacificlegal.org
Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747
JAMES M. MANLEY, Ariz. Bar No. 031820*
Email: JManley@pacificlegal.org
Pacific Legal Foundation
3241 E. Shea Blvd. #108
Phoenix, Arizona 85028
Telephone: (916) 419-7111
Facsimile: (916) 419-7747
*Pro Hac Vice Pending

*Attorneys for Plaintiffs American Society of Journalists and Authors, Inc. and National Press Photographers Association*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| AMERICAN SOCIETY OF JOURNALISTS AND AUTHORS, INC. and NATIONAL PRESS PHOTOGRAPHERS ASSOCIATION,<br><br>Plaintiffs,<br><br>v.<br><br>XAVIER BECERRA, in his official capacity as Attorney General of the State of California,<br><br>Defendant. | Case No.:<br><br>**DECLARATION OF RANDY DOTINGA IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

I, Randy Dotinga, declare as follows:

1. The facts set forth in this declaration are based on my personal knowledge, and if called as a witness, I could and would competently testify thereto under oath. As to those matters which reflect a matter of opinion, they reflect my personal opinion and judgment upon the matter.

2. I have been a full-time freelance writer based in San Diego, California, for 20 years. I am a former president of the American Society of Journalists and Authors (ASJA), an 1,100-member non-profit association of independent non-fiction authors. I served as the ASJA president from 2014-2016 and continue to serve on the ASJA's board of directors. The ASJA was created in 1948 and serves as a voice and resource for freelance writers and book authors.

3. I write for about 10–12 clients a year and make enough money to live comfortably in San Diego, one of the nation's most expensive cities. Most of my clients are based out-of-state but must still comply with California law.

4. I pay self-employment payroll taxes, I file a federal tax Schedule C, I have a city-issued business license, I pay for my own health insurance, and I pay for expenses such as supplies, computer, online access, and cross-country travel to writer conferences to rustle up new assignments.

5. I maintain a business location that is separate from my clients. I set or negotiate my own rates and set my own hours. I customarily contract for freelancing projects and hold myself out to other potential customers as available to perform the same type of work. I customarily and regularly exercise discretion and independent judgment when freelancing.

6. I have been a self-employed independent journalist for 20 years, and I have never tried to get a media staff job during that time. I prefer to work independently for numerous reasons.

7. Freelancing provides me more security and more income than staff media jobs. Over my two decades of freelancing, I have never struggled to put food

on the table. Nor have I worried about my future (until now). I have always kept a stable of multiple clients. I am able to tolerate losing one or two clients because the rest of my workload is generally stable, even during rough economic times, and having multiple clients allows me to survive until I can find replacement clients.

8. By contrast, my newspaper colleagues from the 1990s have almost all abandoned journalism for public relations or other jobs because of the rapid decline of the media industry. Those that decided to stay have suffered through severe uncertainty and unrelenting anxiety. Two of my closest friends, an editor and a photographer, were both laid off by the San Diego Union-Tribune. They were each rehired a few months later. Then they were each laid off again. They continue to struggle. Freelancing has allowed me to continue working in a field I love and remain committed to telling the truth.

9. I value the flexibility that freelancing provides. Control over my workload allows me to care for my elderly parents and my severely disabled brother in a way that would never be possible in a staff job. I am the sole caregiver of all three of them. They are often ill and have made many visits to the emergency room in recent years. Every single time, I have been able to drop everything and rush to their side, whether it is 2:00 in the afternoon or 4:00 in the morning.

10. Freelancing allows me to own the copyright to my work. As a freelancer, I own my work by default and can sell or license it; employers own the work of their employees by default. If I'm forced to become a staff writer, I will automatically lose ownership of my work under copyright law. That means I can't license it to another publication, reprint it in a book or sell it to Hollywood. Nor can I prevent it from being used in inappropriate ways or take legal action if my work is stolen.

11. As an independent contractor, I take business-expense write-offs for a variety of expenses that aren't reimbursable by employers. These include expenses for health insurance and for travel to conferences where I find new work. I save

thousands of dollars this way. If I am put on staff, I will still need health insurance, but it is unlikely that any of my multiple part-time employers will be obligated to provide it.

12. As a freelancer, I have more leeway than staff workers to free myself from abusive work environments and abusive bosses. Ideally, I avoid having any client who accounts for more than 30% of my income. This is standard practice among freelancers. Diversification is crucial. If we find an editor to be abusive or inappropriate, we can "fire" that client and survive—without needing unemployment insurance. That sort of security and control does not exist in staff jobs.

13. AB 5 threatens my livelihood as a freelance journalist and my right to own and control my work. It also treats me as a second-class writer by imposing restrictions on journalists like me that do not burden our freelance colleagues who use their writing skills to promote products and politicians.

14. Hundreds if not thousands of freelance journalists—especially those in digital media—fear losing their jobs due to the 35-submission cap imposed by AB 5. Blacklisting by out-of-state companies and outsourcing by in-state companies is already happening as a direct result of AB 5, as illustrated in the attached Exhibit.

15. I expect that multiple clients will either cut me off in 2020 or limit my workload to a cap, per AB 5, of 35 submissions.

16. Thirty-five submissions is not a lot of work for a freelancer. Writing an article or a blog post can take a matter of minutes or just a few hours. From 1999 until 2011, I wrote a weekly column for a local daily newspaper on a freelance basis. It took me 2–3 hours a week and provided me with reliable income. AB 5's 35-submission cap necessarily forbids freelance writers from producing weekly columns. In my experience, it is unlikely that any news outlet would hire a writer as an employee to just work 2–3 hours a week.

///

///

17. In my role with ASJA, I have learned that AB 5 is especially threatening to groups that are not well-represented among voices in the media: women, ethnic minorities, LGBT people, the disabled, and older people.

18. Honest and accurate journalism is more important than ever. This is an especially dangerous time for the State of California to violate the First Amendment by treating freelance journalists as second-class writers and photographers while favoring marketers—those whose job is to massage the truth. We must be treated the same as everyone else who enjoys the free press and free speech rights guaranteed by the First Amendment.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 16, 2019 at \_\_\_San Diego\_\_\_, California.

_____
RANDY DOTINGA