XAVIER BECERRA
Attorney General of California
TAMAR PACHTER
Supervising Deputy Attorney General
JOSE A. ZELIDON-ZEPEDA
Deputy Attorney General
State Bar No. 227108
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 510-3879
 Fax:  (415) 703-1234
 E-mail:  Jose.ZelidonZepeda@doj.ca.gov
*Attorneys for Defendant Attorney General Xavier Becerra, in his official capacity*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN SOCIETY OF JOURNALISTS AND AUTHORS, INC.; ET AL.,<br><br>v.<br><br>XAVIER BECERRA, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF CALIFORNIA. | 2:19-cv-10645-PSG<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**<br><br>Date:          TBD<br>Time:          TBD<br>Judge:         Hon. Philip S. Gutierrez<br>Trial Date:   None.<br>Action Filed: December 17, 2019 |

**TABLE OF CONTENTS**

**Page**

Introduction .................................................................................................................. 1
Background .................................................................................................................. 1
Legal Standard ............................................................................................................. 3
Argument ..................................................................................................................... 4
    I.     Plaintiffs Are Not Likely to Succeed on the Merits of Their First Amendment Claims ................................................................................. 4
    II.    Plaintiffs' Delay Warrants Denying Temporary Restraining Order. ................................................................................................. 8
    III.   The Public Interest Weights Against a Temporary Restraining Order. ................................................................................................ 10
Conclusion ................................................................................................................. 11

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Alliance for the Wild Rockies v. Cottrell*
   632 F.3d 1127 (9th Cir. 2011) ................................................................................ 4

*Allied Concrete and Supply Company v. Baker*
   904 F.3d 1053 (9th Cir. 2018) ................................................................................ 5

*Arkansas Writers Project Inc. v. Ragland*
   481 U.S. 221 (1987) ................................................................................................ 7

*Burford v. Sun Oil Co.*
   319 U.S. 315 (1943) .............................................................................................. 11

*Carey v. Brown*
   447 U.S. 455 (1980) ................................................................................................ 4

*Coalition for Econ. Equity v. Wilson*
   122 F.3d 718 (9th Cir. 1997) .................................................................................. 9

*Desert Outdoor Advertising, Inc. v. City of Moreno Valley*
   103 F.3d 814 (9th Cir. 1996) .................................................................................. 7

*Dynamex Oper. W. v. Super. Ct.*
   4 Cal. 5th 903 (Cal. 2018) .................................................................................. 1, 2

*FCC v. Beach Communications, Inc.*
   508 U.S. 307 (1993) ................................................................................................ 4

*First Franklin Fin. Corp. v. Franklin First Fin. Ltd.*
   356 F. Supp. 2d 1048 (N.D. Cal. 2005) .................................................................. 9

*Foti v. City of Menlo Park*
   146 F.3d 629 (9th Cir. 1998) .................................................................................. 6

*Fund for Animals v. Lujan*
   962 F.2d 1391 (9th Cir. 1992) .............................................................................. 10

*Giving Back Fund Inc. v. Miami Marketing Group LLC*
   No. CV 10-9705, 2011 WL 13217774 (C.D. Cal. Jan. 20, 2011) ..................... 4, 8

# TABLE OF AUTHORITIES
## (continued)

Page

*Golden Gate Restaurant Ass'n v. City & Cty. of San Francisco*
   512 F.3d 1112 (9th Cir. 2008) .................................................................... 10

*Gonzales v. San Gabriel Transit*
   40 Cal. App. 5th 1131 (Cal. Ct. App. 2019) ................................................ 2

*Harwin v. Goleta Water District*
   953 F.2d 488 (9th Cir. 1991) ........................................................................ 7

*In re Intermagnetics America, Inc.*
   101 B.R. 191 (C.D. Cal. 1989) ................................................................ 4, 9

*Kiva Health Brands LLC v. Kiva Brands Inc.*
   402 F. Supp.3d 877 (N.D. Cal. 2019) ......................................................... 9

*Kobell v. Suburban Lines, Inc.*
   731 F.2d 1076 (3d Cir. 1984) ...................................................................... 9

*Ladd v. Law & Tech. Press*
   762 F.2d 809 (9th Cir. 1985) ........................................................................ 7

*Lydo Enters. v. City of Las Vegas*
   745 F.2d 1211 (9th Cir. 1984) ...................................................................... 4

*Maryland v. King*
   567 U.S. 1301 (2012) ............................................................................ 9, 10

*Merrifield v. Lockyer*
   547 F.3d 978 (9th Cir. 2008) ........................................................................ 5

*Metromedia Broad. Corp. v. MGM/UA Entm't Co, Inc.*
   611 F. Supp. 415 (C.D. Cal. 1985) .............................................................. 9

*Mission Power Eng'g Co. v. Continental Casualty Co.*
   883 F. Supp. 488 (C.D. Cal. 1995) ..................................................... 4, 8, 9

*of N.L.R.B. v. Cal. Pac. Medic. Ctr.*
   991 F.2d 536 (9th Cir. 1993) ........................................................................ 9

*Police Department of City of Chicago v. Mosley*
   408 U.S. 92 (1972) ....................................................................................... 4

# TABLE OF AUTHORITIES
## (continued)

Page

*S.G. Borello & Sons, Inc. v. Dep't of Industrial Relations*
   48 Cal. 3d 341 (Cal. 1989) ................................................................................ 2

*Stormans, Inc. v. Selecky*
   586 F.3d 1109 (9th Cir. 2009) ......................................................................... 10

*Turner Broad. Sys. v. FCC*
   512 U.S. 512 U.S. 622, 643 (1994) ................................................................... 6

*Vaccaro v. Sparks*
   No. SACV 11-00164, 2011 WL 318039 (C.D. Cal. Jan. 28, 2011) ................... 3

*Vance v. Bradley*
   440 U.S. 93 (1979) ............................................................................................ 7

*Wagner v. Federal Election Commission*
   793 F.3d 1 (D.C. Cir. 2015) .............................................................................. 5

*Weinberger v. Romero-Barcelo*
   456 U.S. 305 (1982) ........................................................................................ 10

*Williford v. Ocwen Loan Servicing LLC*
   No. CV 09-06464, 2011 WL 13187265 (C.D. Cal. July 15, 2011) .................. 8

*Winter v. Nat. Res. Def. Council, Inc.*
   555 U.S. 7 (2008) .............................................................................................. 3

**STATUTES**

California Labor Code
   § 2750.3(c)(1) .................................................................................................... 2
   §§ 2750.3(c)(2)(B)(i)-(vi) ................................................................................. 6
   § 2750.3(c)(2)(B)(ix) ..................................................................................... 2, 6
   § 2750.3(c)(2)(B)(x) ...................................................................................... 2, 6
   § 2750.3, subd. (a)(1) ........................................................................................ 2
   § 3351(i) ............................................................................................................ 2

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

**CONSTITUTIONAL PROVISIONS**

United States Constitution
   First Amendment ................................................................................*passim*
   Fourteenth Amendment ............................................................................ 3, 4

**OTHER AUTHORITIES**

California Assembly Bill 5 ............................................................................... 1

## INTRODUCTION

This case challenges Assembly Bill 5 (AB 5), a California law enacted on September 18, 2019, and which went into effect on January 1, 2020.  AB 5 is the Legislature's attempt to ensure that employees who are improperly misclassified as independent contractors receive the appropriate benefits guaranteed by state labor laws.  Plaintiffs challenge this law on Equal Protection and First Amendment grounds.

Plaintiffs waited three months to file suit against a law enacted in September 2019.  They waited another two weeks before seeking preliminary relief, without explaining this delay.  This delay by itself warrants denying the requested temporary restraining order.  More importantly, their legal claims lack merit.  For these reasons, the Court should deny the Plaintiffs' request for a temporary restraining order.

## BACKGROUND

In 2018 the California Supreme Court held that courts should apply the "ABC" test to determine whether a worker is properly classified as an employee for certain purposes. *Dynamex Oper. W. v. Super. Ct.*, 4 Cal. 5th 903, 916 (Cal. 2018). Under this test, a worker may be classified an independent contractor, rather than an employee, only if the hiring entity establishes:  (a) that the worker is "free from the control and direction of the hirer in connection with the performance of the work, both under the contract for the performance of such work and in fact;" (b) that the worker "performs work that is outside the usual course of the hiring entity's business;" and (c) that the worker is "customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed for the hiring entity." *Id.* at 916-17.  If the hiring entity cannot satisfy all three elements, the worker is presumptively an included employee, rather than an excluded independent contractor. *Id.* at 964.

On September 18, 2019, the California Legislature codified the ABC test adopted in *Dynamex* by enacting AB 5, which became effective January 1, 2020. Cal. Lab. Code, § 2750.3, subd. (a)(1).  The Legislature intended through AB 5 "to ensure workers who are currently exploited by being misclassified as independent contractors instead of recognized as employees have the basic rights and protections they deserve under the law."  *Gonzales v. San Gabriel Transit*, 40 Cal. App. 5th 1131, 1140 n.4 (Cal. Ct. App. 2019), citation omitted.

Under AB 5, the ABC test is the statutory standard for ascertaining whether a worker is an employee or an independent contractor in contexts beyond those at issue in *Dynamex*, including (among other things) workers' compensation, unemployment insurance, and disability insurance.  Cal. Lab. Code, § 3351(i).  AB 5 also provides statutory exemptions for certain categories of workers, which remain subject to the so-called *Borello* standard.[1]  *Id.* 2750.3(c)(1).  As relevant here, AB 5 provides exemptions for "a contract for 'professional services,'" which includes: (1) "services provided by a still photographer or photojournalist who do not license content submissions to the putative employer more than 35 times per year;" and (2) "services provided by a freelance writer, editor, or newspaper cartoonist who does not provide content submissions to the putative employer more than 35 times per year."  *Id.* 2750.3(c)(2)(B)(ix) & (x).  The exemption provided to photographers and photojournalists does not apply "to an individual who works on

---

[1] Under the *Borello* standard the key question to assess whether an individual is an employee is "whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired."  *S.G. Borello & Sons, Inc. v. Dep't of Industrial Relations*, 48 Cal. 3d 341, 350 (Cal. 1989).  *Borello* additionally utilizes numerous secondary indicia that inform the assessment of classifying workers: (a) whether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work; (e) the length of time for which services are to be performed; (f) the method of payment; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating an employer-employee relationship.  *Id.* at 351.

motion pictures, which includes, but is not limited to" projects for theatrical, television, internet, broadcast news, etc. *Id.* § 2750(c)(2)(B)(ix).

The complaint alleges that AB 5 "limits freelancers' ability to record, sell, or publish audio content." (ECF No. 1 at 6 ¶ 30.) Specifically, they claim that AB 5 burdens their free speech rights by limiting the exemption from the ABC test to 35 submissions. (ECF No. 1 at 7 ¶ 36.) They claim that without the exemption, Plaintiffs will be classified as employees, which allegedly "brings significant new costs and disadvantages." (*Id.*) This is because employee status means that employers will have to pay unemployment taxes, workers' compensation, etc., which will in turn "make Plaintiffs' members' work more costly—and thus less attractive—to the client-turned-employer." (*Id.*) They also contend that the exclusion of videography from the exemption for "professional services" is unconstitutional. (*Id.* at 14 ¶¶ 83-85.)

Plaintiffs bring free speech, free press, and equal protections claims under the First and Fourteenth Amendments to the Constitution, and seek declaratory and injunctive relief. (ECF No. 1 at 9 ¶¶ 50, 52.)

## LEGAL STANDARD

"An application for a temporary restraining order involves the invocation of a drastic remedy which a court of equity ordinarily does not grant, unless a very strong showing is made of a necessity and desirability of such action." *Vaccaro v. Sparks*, No. SACV 11-00164, 2011 WL 318039, at *1 (C.D. Cal. Jan. 28, 2011) (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 103 F. Supp. 978, 980 (D.D.C. 1952)). Similar standards govern issuance of both temporary restraining orders and preliminary injunctions. Plaintiffs must demonstrate that they are likely to succeed on the merits of their claims, that they are likely to suffer irreparable harm without preliminary relief, that the balance of equities tips in their favor, and that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S.

7, 20 (2008); *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

Delay in seeking preliminary relief "is a factor to be considered in weighing the propriety of relief." *Lydo Enters. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) (preliminary injunction context). Thus, delay in seeking a temporary restraining order has been found sufficient cause to deny relief. *Giving Back Fund Inc. v. Miami Marketing Group LLC*, No. CV 10-9705, 2011 WL 13217774, at *4 (C.D. Cal. Jan. 20, 2011). The movant must also establish that "it is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Mission Power Eng'g Co. v. Continental Casualty Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995); *In re Intermagnetics America, Inc.*, 101 B.R. 191, 193 (C.D. Cal. 1989).

## ARGUMENT

### I.  PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON THE MERITS OF THEIR FIRST AMENDMENT CLAIMS.

Plaintiffs argue that a temporary restraining order should issue because they are likely to succeed on their equal protection and First Amendment claims. This argument fails.

Initially, Plaintiffs misstate the applicable legal standard, arguing that "arbitrary distinctions drawn by AB 5 between different kinds of freelancers are subject to strict scrutiny." (ECF No. 27-1 at 15-16.) This is incorrect. Absent a suspect class, distinctions drawn in legislation are subject to rational basis review. *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993). Plaintiffs rely on *Police Department of City of Chicago v. Mosley*, 408 U.S. 92 (1972), but that case involved a challenge to a local anti-picketing ordinance, directly regulating speech. *See also Carey v. Brown*, 447 U.S. 455 (1980) (addressing First and Fourteenth Amendment challenges to a picketing statute). By contrast, AB 5 does not directly regulate speech, and Plaintiffs do not claim otherwise. Rather, AB 5 provides

statutory exemptions from an overarching state scheme governing labor regulations. *See Wagner v. Federal Election Commission*, 793 F.3d 1, 33 (D.C. Cir. 2015). "Although the Court has on occasion applied strict scrutiny in examining equal protection challenges in cases involving First Amendment rights, it has done so only when a First Amendment analysis would have itself required such scrutiny." *Id.* at 32. As the Court of Appeal noted in a challenge to a statute regulating campaign contributions, where "there is no doubt that the interests invoked in support of the challenged classification are legitimate, and no doubt that the classification was designed to vindicate those interests rather than disfavor a particular speaker or viewpoint, the challengers 'can fare no better under the Equal Protection Clause than under the First Amendment itself.'" *Id.* (quoting *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 55 n.4 (1986)). Here, there is no doubt that the State has a legitimate interest in ensuring that employees receive all the protections under labor law. *Dynamex*, 4 Cal. 5th at 912-13 (describing consequences of employee status)

      Under rational basis, Plaintiffs are unlikely to succeed on their equal protection claim. In *Allied Concrete and Supply Company v. Baker*, 904 F.3d 1053 (9th Cir. 2018), the plaintiffs challenged a California law that covered delivery drivers of ready-mix concrete under the state's prevailing wage laws, and the Ninth Circuit rejected the equal protection claim. *Id.* at 1060. The challenged statutory classification is "presumed constitutional," and the plaintiffs thus are required to "negative every conceivable basis which might support it." *Id.* (citation omitted). Plaintiffs argue that the AB 5 statutory exemption fails even under rational basis, but provide no reasoned support for this argument other than a stray citation to *Merrifield v. Lockyer*, 547 F.3d 978 (9th Cir. 2008), and a request to "incorporate by reference" the arguments in their motion for a preliminary injunction. (ECF No. 27-1 at 15-16.) But as the Ninth Circuit as explained, *Merrifield* involved a "unique set of facts," where the challenged legislative classification "actually

5

contradict[ed]" the purposes of the statute, or otherwise suggested "improper favoritism." *Allied Concrete & Supply Co.*, 904 F.3d at 1065-66. The same is not true or alleged here.

Plaintiffs' First Amendment claims are also unlikely to succeed on the merits. The complaint alleges that AB 5's exemption for "professional services" improperly discriminates based on the content of speech, and the medium of expression a speaker uses. (ECF No. 27-1 at 16.) "As a general rule, laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content based." *Turner Broad. Sys. v. FCC*, 512 U.S. 512 U.S. 622, 643 (1994). On the other hand, "laws that confer benefits or impose burdens on speech without reference to the ideas or views expressed are in most instances content neutral." *Id.* Usually, a regulation's purpose or justification will be evident on its face. *Id.* at 642.

Here, the "professional services" exemption to AB 5 does not reference an idea or viewpoint, or otherwise reflect a bias for or against any speech or viewpoint; it instead hinges on whether the individual providing the service is a still photographer, photojournalist, freelance writer, editor, or newspaper cartoonist. Cal. Lab. Code § 2750.3(c)(2)(B)(ix) & (x). Plaintiffs argue, without any support, that the "ability to freelance rises or falls based on whether expression is deemed marketing or editorial, graphic design, or photography, grant writing or news reporting." (ECF No. 27-1 at 17-18.) These appear to be references to the statutory exemptions under AB 5 for occupations *other than* those covering Plaintiffs. Cal. Lab. Code § 2750.3(c)(2)(B)(i)-(vi). But Plaintiffs do not explain how these other statutory exemptions demonstrate that the exemption for freelance authors is content-based rather than the Legislature's effort to ensure fair treatment for employees.

Plaintiffs also argue that AB 5 somehow singles out "the press as a whole" for unfavorable treatment because it purportedly "den[ies] full freedom to freelance

6

only to those writers and photographers who do not fit within the content-based exemptions for fine artist, marketing, graphic design, and grant writing," (ECF at 27-1 at 18), but again fail to point to any aspect of AB 5 that predicates the statutory exemptions on the substance of a communication. *Cf. Foti v. City of Menlo Park*, 146 F.3d 629, 636 (9th Cir. 1998) (upholding First Amendment challenge to local regulation prohibiting signs on public property but exempting real estate, safety, traffic, and other signs); *see also Desert Outdoor Advertising, Inc. v. City of Moreno Valley*, 103 F.3d 814, 820 (9th Cir. 1996) (First Amendment challenge to general sign regulation exemptions based on content). As explained above, the exemptions for freelance writers and still photographers do not hinge on any aspect of the content they produce.

Plaintiffs rely on *Arkansas Writers Project Inc. v. Ragland*, 481 U.S. 221 (1987), which addressed a state law that exempted from taxation newspapers and "religious profession, trade and sports" publications. The Court concluded that this scheme impermissibly hinged on the content of the publication. *Id.* at 230; *see also Ladd v. Law & Tech. Press*, 762 F.2d 809, 815 (9th Cir. 1985) (rejecting First Amendment challenge to copyright law requirement that a publisher deposit two copies of its publication with the Library of Congress because the requirement "is not triggered by the publication of ideas"). Plaintiffs' reliance on *Harwin v. Goleta Water District*, 953 F.2d 488 (9th Cir. 1991), is similarly unavailing because that case involved a discriminatory contribution limitation. *Id.* at 491.

Lastly, Plaintiffs argue that AB 5's exclusion of "video recording" impermissibly regulates the medium of expression. (ECF No. 27-1 at 18.) AB 5 excludes from the statutory exemption "an individual who works on motion pictures, which includes, but is not limited to," projects for theatrical, television, internet, broadcast news, etc. Cal. Lab. Code § 2750(c)(2)(B)(ix). But, as courts have pointed out, a plaintiff challenging a legislative classification "must convince the court that the legislative facts on which the classification is apparently based

could not reasonably be conceived to be true by the governmental decisionmaker." *Vance v. Bradley*, 440 U.S. 93, 111 (1979). Although Plaintiffs contend generally that video recording is protected by the First Amendment, they do not provide any support that it is somehow accorded special treatment under case law.

## II. PLAINTIFFS' DELAY WARRANTS DENYING TEMPORARY RESTRAINING ORDER.

Plaintiffs cannot establish that a temporary restraining order is appropriate here because they unduly delayed in seeking relief, and have not explained this delay. AB 5 was enacted and signed by the Governor on September 18, 2019. Plaintiffs did not file suit or seek injunctive relief until December 17, 2019, three months after the challenged law was approved, and less than 15 days before AB 5's effective date. Plaintiffs' ex parte application does not address this lapse of time or otherwise explain the delay in seeking relief. (*See generally* ECF No. 27-1.)

A party seeking a temporary restraining order must establish, in addition to likelihood of success on the merits, that it is "without fault in creating the crisis that requires ex parte relief." *Mission Power Eng'g Co.*, 883 F. Supp. at 492. "It is the creation of the crisis—the necessity for bypassing regular motion procedures—that requires explanation." *Id.* at 493. Plaintiffs do not attempt to meet this requirement, and instead argue that they attempted to confer with Defendants' counsel on December 27, 2019, four days before they filed the motion. (ECF No. 27 at 4.)[2] Plaintiffs do not explain why they waited almost three months to file suit against AB 5, even though it was approved in September 2019, and subsequently did not file their application for a temporary restraining order until one day before the law goes into effect (that day being an intervening holiday).

---

[2] Although Plaintiffs' motion asserts that they "first reach[ed] out on December 23," (ECF No. 27 at 4), this is belied by their Notice to Counsel, which states that "on Monday, December 23, Plaintiffs' counsel Caleb Trotter attempted to determine who in the Attorney General's office was serving as counsel for Defendant in this case, but he was unable to so determine," and subsequently left a voicemail for Defendants' counsel on December 27. (ECF No. 27-2.)

Ex parte relief is an extreme remedy, and should be denied when the movant delays seeking preliminary relief. *Giving Back Fund Inc.*, 2011 WL 13217774, at *4; *Williford v. Ocwen Loan Servicing LLC*, No. CV 09-06464, 2011 WL 13187265, at *3 (C.D. Cal. July 15, 2011). This is particularly so when the ex parte application does not adequately explain "the necessity for bypassing regular motion procedures." *Mission Power Eng'g Co.*, 883 F. Supp. at 492. "Ex parte applications are not intended to save the day for parties who have failed to present requests when they should have." *In re Intermagnetics America, Inc.*, 101 B.R. at 193.

The same principle applies to preliminary injunction requests. As the Ninth Circuit has noted, a plaintiff's "long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm." *Miller for and on behalf of N.L.R.B. v. Cal. Pac. Medic. Ctr.*, 991 F.2d 536, 544 (9th Cir. 1993) (citation omitted); *see also Kobell v. Suburban Lines, Inc.*, 731 F.2d 1076, 1091 n.27 (3d Cir. 1984) ("[T]he district court may legitimately think it suspicious that the party who asks to preserve the status quo through interim injunctive relief has allowed the status quo to change through unexplained delay."). Indeed, courts in this Circuit have found unexplained delays of three months in seeking injunctive relief supported a finding of lack of irreparable harm. *First Franklin Fin. Corp. v. Franklin First Fin. Ltd.*, 356 F. Supp. 2d 1048, 1055 (N.D. Cal. 2005); *see also Metromedia Broad. Corp. v. MGM/UA Entm't Co, Inc.*, 611 F. Supp. 415, 427 (C.D. Cal. 1985) (concluding that four month delay warranted denying injunctive relief); *Kiva Health Brands LLC v. Kiva Brands Inc.*, 402 F. Supp.3d 877, 898-99 (N.D. Cal. 2019) (same).

Moreover, the State will suffer irreparable injury if this Court enjoins AB 5's enforcement. "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, ___, 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in

chambers) (citation omitted); *Coalition for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997) ("[I]t is clear that a state suffers irreparable injury whenever an enactment of its people or their representatives is enjoined."). Plaintiffs contend that they need not make any further showing of irreparable injury because they have alleged a "colorable" First Amendment claim, (ECF No. 27-1), but as explained above, their claims lack merit.

Lastly, the balance of equities tips against a temporary restraining order because Plaintiffs seek to *change* the status quo. The ABC test has been the "status quo" since AB 5 went into effect on January 1. Plaintiffs seek to *alter* this status quo. *Golden Gate Restaurant Ass'n v. City & Cty. of San Francisco*, 512 F.3d 1112, 1116 (9th Cir. 2008). Plaintiffs have not established harm sufficient to outweigh the injury their requested injunction would inflict on the State.

### III. THE PUBLIC INTEREST WEIGHTS AGAINST A TEMPORARY RESTRAINING ORDER.

Plaintiffs must also establish that the public interest warrants a temporary restraining order, but merely argue generally that protecting First Amendment rights is in the public interest. (ECF No. 27-1 at 21.) Plaintiffs' perfunctory analysis fails because the public interest weighs heavily against enjoining state law.

"In cases where the public interest is involved, the district court must also examine whether the public interest favors the plaintiff." *Fund for Animals v. Lujan*, 962 F.2d 1391, 1400 (9th Cir. 1992); *see also Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) ("In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."). The public interest is involved when an injunction impacts individuals beyond the parties. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009).

As noted above, courts hold that states suffer harm when enforcement of their laws is enjoined. *Maryland v. King*, 567 U.S. 1301, ___, 133 S. Ct. 1, 3 (2012)

(Roberts, C.J., in chambers) (citation omitted). Where, as here, "responsible public officials" have considered the public interest and enacted a statute, the public interest weighs against enjoining such legislation. *Golden Gate Restaurant Ass'n*, 512 F.3d at 1126-27. "[I]t is in the public interest that federal courts of equity should exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy." *Burford v. Sun Oil Co.*, 319 U.S. 315, 318 (1943).

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' ex parte application for a temporary restraining order and request for an order to show cause for preliminary injunctive relief.

Dated: January 2, 2020

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
TAMAR PACHTER
Supervising Deputy Attorney General

/s/ *Jose A. Zelidon-Zepeda*
JOSE A. ZELIDON-ZEPEDA
Deputy Attorney General
*Attorneys for Defendant Attorney General Xavier Becerra, in his official capacity*

SA2019106422
21759991.docx

# CERTIFICATE OF SERVICE

Case Name: **American Society of Journalists and Authors, Inc. et al v. Xavier Becerra**   Case No. **2:19-cv-10645**

I hereby certify that on <u>January 2, 2020</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

- **DEFENDANT'S OPPOSITION TO PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>January 2, 2020</u>, at San Francisco, California.

| M. Mendiola | /s/ *M. Mendiola* |
|---|---|
| Declarant | Signature |

SA2019106422
21761459.docx