1  XAVIER BECERRA
   Attorney General of California
2  TAMAR PACHTER
   Supervising Deputy Attorney General
3  JOSE A. ZELIDON-ZEPEDA
   Deputy Attorney General
4  State Bar No. 227108
    455 Golden Gate Avenue, Suite 11000
5   San Francisco, CA 94102-7004
    Telephone: (415) 510-3879
6  Fax: (415) 703-1234
    E-mail: Jose.ZelidonZepeda@doj.ca.gov
7  *Attorneys for Attorney General Xavier Becerra, in
   his official capacity*

8

9              IN THE UNITED STATES DISTRICT COURT

10            FOR THE CENTRAL DISTRICT OF CALIFORNIA

11                     WESTERN DIVISION

12

13

14

| | |
|---|---|
| **American Society of Journalists and Authors; et al.,** | 2:19-cv-10645-PSG |
| Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING DEFENDANT'S MOTION TO DISMISS** |
| v. | |
| **Attorney General Xavier Becerra, in his official capacity,** | Date:        March 23, 2020 |
| | Time:        1:30 P.M. |
| | Courtroom:   6A, 6th Floor |
| Defendant. | Judge:       Hon. Philip S. Gutierrez |
| | Trial Date:  Not set |
| | Action Filed: December 17, 2019 |

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION..................................................................................................1

BACKGROUND...................................................................................................2

        A.    The Parties............................................................................2

        B.    The *Dynamex* Decision .......................................................2

        C.    Assembly Bill 5 .....................................................................3

        D.    Allegations of the Complaint ................................................5

LEGAL STANDARD.........................................................................................7

ARGUMENT .......................................................................................................7

    I.     Plaintiffs Fail To Allege a Viable Equal Protection Claim....................7

        A.    The Limitations on Exemptions 9 and 10 Distinguish Based on Volume of Submissions and Industry, Not Occupation, and In Any Event Do Not Accord Differential Treatment to Similarly Situated Individuals. ..........8

        B.    The Challenged Limitations on Exemptions 9 and 10 Satisfy the Applicable Rational Basis Standard of Review as a Matter of Law....................................................................10

    II.    Plaintiffs Fail to Allege a Viable First Amendment Claim................11

        A.    The 35-Submission Limit Is Not a Content-Based Restriction ............................................................................12

        B.    The Motion Picture Exclusion Is Not Content Based...............14

CONCLUSION ..................................................................................................16

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Allied Concrete and Supply Co. v. Baker*
    904 F.3d 1053 (9th Cir. 2018) ......................................................................9, 11

*Arkansas Writers Project Inc. v. Ragland*
    481 U.S. 221 (1987)..........................................................................................14

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009)............................................................................................7

*Carey v. Brown*
    447 U.S. 455 (1980)..........................................................................................15

*City of Cleburne v. Cleburne Living Ctr.*
    473 U.S. 432 (1985).......................................................................................8, 10

*Clements v. Fashing*
    457 U.S. 957 (1982)..........................................................................................11

*Dandridge v. Williams*
    397 U.S. 471 (1970)..........................................................................................11

*Desert Outdoor Advertising, Inc. v. City of Moreno Valley*
    103 F.3d 814 (9th Cir. 1996) ...........................................................................13

*Doe v. Harris*
    772 F.3d 563 (9th Cir. 2014) ...........................................................................13

*Dynamex Operations West v. Superior Court*
    4 Cal. 5th 903 (Cal. 2018)................................................................................2, 4

*FCC v. Beach Communications, Inc.*
    508 U.S. 307 (1993).....................................................................................10, 11

*Foti v. City of Menlo Park*
    146 F.3d 629 (9th Cir. 1998) ...........................................................................13

*Furnace v. Sullivan*
    705 F.3d 1021 (9th Cir. 2013) ...........................................................................8

**TABLE OF AUTHORITIES**
(continued)

Page

*G.K. Ltd. Travel v. City of Lake Oswego*
   436 F.3d 1064 (9th Cir. 2006) ...........................................................13

*Hampsmire v. City of Santa Cruz*
   899 F. Supp. 2d 922 (N.D. Cal. 2012)................................................13

*In re Cutera Sec. Litig.*
   610 F.3d 1103 (9th Cir. 2010) .............................................................7

*Lindsley v. Natural Carbonic Gas Co.*
   220 U.S. 61 (1911)..............................................................................11

*Lone Star Security and Video, Inc. v. City of Los Angeles*
   827 F.3d 1192 (9th Cir. 2016) ...........................................................16

*Nader v. Cronin*
   620 F.3d 1214 (9th Cir. 2010) ...........................................................11

*Nordlinger v. Hahn*
   505 U.S 1 (1992).................................................................................10

*Police Department of City of Chicago v. Mosley*
   408 U.S. 92 (1972)..............................................................................15

*Recycle for Change v. City of Oakland*
   856 F.3d 666 (9th Cir. 2017) .......................................................14, 15

*Reed v. Town of Gilbert, Ariz.*
   135 S. Ct. 2218 (2015)............................................................. 12, 13, 15

*Shakur v. Schriro*
   514 F.3d 878 (9th Cir. 2008) ...............................................................8

*Thornton v. City of St. Helens*
   425 F.3d 1158 (9th Cir. 2005) .......................................................8, 10

*Turner Broad. Sys. v. FCC*
   512 U.S. 512 U.S. 622, 643 (1994).................................................12, 15

*U.S. v. Ritchie*
   342 F.3d 903 (9th Cir. 2003) ...............................................................7

# TABLE OF AUTHORITIES
## (continued)

Page

*U.S. v. Swisher*
811 F.3d 299 (9th Cir. 2016) (en banc) ..............................................................15

*Wagner v. Federal Election Commission*
793 F.3d 1 (D.C. Cir. 2015)..............................................................................15

**STATUTES**

California Labor Code
§ 2750.3(a)(1).............................................................................................1, 4
§ 2750.3(b)-(h)..................................................................................................5
§ 2750.03(c)(2)(B)(i), (iv)-(vi) ........................................................................6
§ 2750.3(c)(2)(B)(ix).............................................................................5, 9, 14
§ 2750.3(c)(2)(B)(ix) & (x) ..........................................................5, 9, 12, 13

**CONSTITUTIONAL PROVISIONS**

United States Constitution
First Amendment............................................................................... *passim*
Fourteenth Amendment ...............................................................................6, 15

**COURT RULES**

Fed. R. Civ. P. 12(b)(6)...................................................................................7

**OTHER AUTHORITIES**

Assembly Bill No. 5 ..................................................................................... *passim*

## INTRODUCTION

The Legislature determined that widespread and systematic employer misclassification of workers as independent contractors, instead of as employees, was exploiting working Californians by denying them significant statutory labor protections, unfairly disadvantaging employers who properly classify employees, and shifting costs from employers to employees, the state, and taxpayers, resulting in rising income inequality and straining the state's economic safety net. To address these inequities, the Legislature passed AB 5, which codified and expanded the scope of the "ABC" test adopted by the California Supreme Court in April 2018 to clarify these classification determinations. Under the ABC test, for certain purposes under California law, a "person providing labor or services for remuneration" will be considered an employee rather than an independent contractor, unless the hiring entity can satisfy three criteria. Cal. Lab. Code, § 2750.3(a)(1).

AB 5 also created exemptions from the ABC test for certain occupations and industries. As relevant here, AB 5 includes an exemption for freelance writers, editors, and newspaper cartoonists, as well as an exemption for still photographers and photojournalists, but these two exemptions are subject to limitations. It is the limitations on these two exemptions from the ABC test, one based on volume of work and another based on type of industry, that are the subject of Plaintiffs' challenge. Specifically, they allege that these limitations (the exceptions to the exemptions) fail on Equal Protection and First Amendment grounds.

The Court should dismiss the complaint in its entirety for failure to allege a viable claim. The limitations challenged here are ordinary legislative line-drawing in generally applicable economic regulation. Plaintiffs' Equal Protection claims fail because the challenged limitations on these exemptions do not distinguish between similarly situated groups, and even if they did, are subject to rational basis review,

1    and satisfy that standard as a matter of law.  Plaintiffs' First Amendment claims fail

2    as a matter of law because the challenged limitations are not restrictions on speech

3    nor do they classify based on the content of speech.

4                                    **BACKGROUND**

5       **A.   The Parties.**

6          Plaintiff American Society of Journalists and Authors is "the nation's largest

7    professional organization of independent nonfiction writers," and it is made up of

8    freelance writers of magazine articles, trade books, and other forms of nonfiction

9    writing. (ECF No. 1 at 3 ¶ 10.)  Plaintiff National Press Photographers Association

10   advocates for "visual journalists' First Amendment rights to report on news and

11   matters of public concern," and to protect the copyright of their images.  (*Id.* at 3 ¶

12   14.)  Defendant Xavier Becerra is the Attorney General of California, and the chief

13   law officer of the state.  (*Id.* at 4 ¶ 16.)  He is sued in his official capacity.  (*Id.*)

14      **B.   The *Dynamex* Decision.**

15         The distinction between workers classified as employees and those classified

16   as independent contractors is significant because under California law employers

17   have obligations to employees that are not afforded to independent contractors.  *See*

18   *Dynamex Operations West v. Superior Court*, 4 Cal. 5th 903, 912 (Cal. 2018).  In

19   April 2018, the California Supreme Court held that courts must apply the ABC test

20   to determine whether a worker is classified as an employee for certain purposes

21   under California's labor laws.  *Id.* at 916.  *Dynamex* noted that the "critically

22   important objectives" of wage and hour laws, including ensuring low income

23   workers' wages and conditions despite their weak bargaining power, "support a

24   very broad definition of the workers" who fall within the employee classification.

25   *Id.* at 952.  Similarly, a broad definition benefits "those law-abiding businesses that

26   comply with the obligations imposed" by state labor laws, "ensuring that such

27   responsible companies are not hurt by unfair competition from competitor

28   businesses that utilize substandard employment practices."  *Id.*  Lastly, the ABC

                                           2

1   test also benefits "the public at large, because if the wage orders' obligations are not

2   fulfilled, the public often will be left to assume the responsibility of the ill effects to

3   workers and their families resulting from substandard wages or unhealthy and

4   unsafe working conditions." *Id.* at 953.

5        Under this test, a worker is considered an employee, rather than an

6   independent contractor, unless the hiring entity establishes:  (a) that the worker is

7   "free from the control and direction of the hirer in connection with the performance

8   of the work, both under the contract for the performance of such work and in fact;"

9   (b) that the worker "performs work that is outside the usual course of the hiring

10   entity's business;" and (c) that the worker is "customarily engaged in an

11   independently established trade, occupation, or business of the same nature as the

12   work performed for the hiring entity." *Id.* at 916-17.

13   **C.   Assembly Bill 5.**

14        The Legislature subsequently enacted AB 5, which codified the ABC test and

15   expanded its scope.  The Legislature found that "[t]he misclassification of workers

16   as independent contractors has been a significant factor in the erosion of the middle

17   class and the rise in income inequality."  (AB 5 § 1(c).)  In enacting AB 5, the

18   Legislature intended "to ensure workers who are currently exploited by being

19   misclassified as independent contractors instead of recognized as employees have

20   the basic rights and protections they deserve under the law," including minimum

21   wage, workers' compensation, unemployment insurance, paid sick leave, and paid

22   family leave.  (*Id.* § 1(e).)  The Legislature noted that "a 2000 study commissioned

23   by the U.S. Department of Labor found that nationally between 10% and 30% of

24   audited employers misclassified workers," and that a 2017 audit program by the

25   California Employment Development Department that conducted 7,937 audits and

26   investigations "identified nearly *half a million* unreported employees."  (Bill

27   Analysis, Assembly Committee on Labor and Employment 7/5/19 at p. 2, available

28   at

1   https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201920200

2   AB5 [last visited Jan. 24, 2020].)

3       By adopting the ABC test, AB 5 "restores these important protections to

4   potentially several million workers who have been denied these basic workplace

5   rights that all employees are entitled to under the law." (*Id.*) AB 5 codifies the

6   ABC test adopted in *Dynamex*, and extends its scope to contexts beyond those at

7   issue in *Dynamex*, to include (among other things) workers' compensation,

8   unemployment insurance, and disability insurance. Cal. Lab. Code, § 2750.3(a)(1);

9   *id.* § 3351(i).

10      AB 5 also created limited statutory exemptions to the ABC test for certain

11  occupations and industries, where the Legislature felt the ABC test was not a good

12  fit. The Legislature considered various factors in deciding on these exemptions,

13  including whether the individuals were licensed (for example, insurance brokers,

14  physicians and surgeons, and securities dealers). (Bill Analysis, Senate Committee

15  on Labor Employment and Retirement 7/8/19 at pp. 2-3,

16  https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201920200

17  AB5 [last visited Jan. 24, 2020].) Other factors considered included the worker's

18  freedom from direction or control of the hiring entity (for example, workers

19  providing hairstyling and barbering services). (*Id.*) Still others were considered for

20  an exemption if they perform "professional services," as a sole proprietor or other

21  business entity. (*Id.*) In its effort to identify the hallmarks of "true" independent

22  contractors for purpose of exemptions from the ABC test, the Legislature also

23  considered the bargaining power of workers in particular occupations and

24  industries, the ability of the worker in particular occupations and industries to set

25  their own rate of pay, and the nature of the relationship between the contractor and

26  the client. (*Id.* at 8-10.)

27      AB 5 provides several categories of exemptions, from the ABC test, including

28  an exemption for "a contract for 'professional services.'" (Cal. Lab. Code §

2750.3(b)-(h); *id.* §2750.03(c).)  At issue here are two of these enumerated professional services exemptions: (1) "services provided by a still photographer or photojournalist who do not license content submissions to the putative employer more than 35 times per year"[1] ("Exemption 10"); and (2) "services provided by a freelance writer, editor, or newspaper cartoonist who does not provide content submissions to the putative employer more than 35 times per year"[2] ("Exemption 9").  (Cal. Lab. Code § 2750.3(c)(2)(B)(ix) & (x).  Exemption 9 does not apply at all to still photographers and photojournalists working in the motion picture industry, specifically, "to an individual who works on motion pictures, which includes, but is not limited to" projects for theatrical, television, internet streaming for any device, commercial productions, broadcast news, music videos, and live shows, "whether distributed live or recorded for later broadcast, regardless of the distribution platform."  *Id.* § 2750.3(c)(2)(B)(ix).

### D.   Allegations of the Complaint.

The complaint alleges that AB 5's "expansion of the ABC test means that freelancers like the writers, editors, photographers, and videographers who comprise Plaintiffs' members must be classified as employees of the publishers for which they produce content."  (ECF No. 1 at 5 ¶ 25.)  As a result, AB 5 allegedly "limits freelancers' ability to record, sell, or publish audio content."  (*Id.* at 6 ¶ 30.)  They contend that without the exemption, Plaintiffs will be classified as employees, which allegedly "brings significant new costs and disadvantages."  (*Id.* at 7 ¶ 36.)  This is because employee status means that employers will have to pay

---

[1] For this exemption, a "submission" is defined as "one or more items or forms of content produced by a still photographer or photojournalist that: (I) pertains to a specific event or specific subject; (II) is provided for in a contract that defines the scope of the work; and (III) is accepted by and licenses to the publication or stock photography company and published or posted."  Cal. Lab. Code § 2750.3(c)(2)(B)(ix).

[2] For this exemption, a "submission" is "one or more items or forms of content by a freelance journalist that: (I) pertains to a specific event or topic; (II) is provided for in a contract that defines the scope of the work; and (III) is accepted by the publication or company and published or posted for sale."  Cal. Lab. Code § 2750.3(c)(2)(B)(x).

unemployment taxes, workers' compensation, etc., which will in turn "make Plaintiffs' members' work more costly—and thus less attractive—to the client-turned-employer." (*Id.*)

Plaintiffs bring free speech, free press, and equal protection claims under the First and Fourteenth Amendments to the Constitution, and seek declaratory and injunctive relief. (ECF No. 1 at 10-15.) Specifically, they claim that 35-submission limit on the Exemptions 9 and 10 violates the Equal Protection Clause, because this volume limitation does not apply to other exemptions for professional services in marketing, graphic design, grant writing, and fine art (see Cal. Lab. Code § 2750.03(c)(2)(B)(i), (iv)-(vi), "Exemptions 1, 4, 5 and 6"). (ECF No. 1 at 11-13 ¶¶ 53-60.) They likewise contend that excluding from Exemption 9 photographers and photojournalists working in the motion picture industry violates equal protection, because the same industry limitation does not apply to Exemptions 1, 4, 5 and 6 (exemptions for marketers, graphic designers, grant writers, and fine artists) (see Cal. Lab. Code § 2750.03(c)(2)(B)(i),(iv)-(vi). (ECF No. 1 at 11-13 ¶¶ 61-72.) Lastly, they claim that both the 35-submission limit, and the exclusion of those photographers and photojournalists in the motion picture industry, violate their First Amendment rights. (*Id.* at 13-15, ¶¶ 74-90.)

Plaintiffs seek declaratory relief that the 35-submission exemption and the exclusion of motion pictures violates the Equal Protection and First Amendment rights of the Plaintiffs' members "facially and as-applied." (ECF No. 1 at 15-16.) They also seek temporary and permanent injunctive relief, and an award of attorneys' fees and costs. (*Id.*)

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint should be dismissed if it fails to state a claim upon which relief can be granted. A court should dismiss a complaint "if it fails to plead enough facts to state a claim to relief that is plausible in its face." *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1107 (9th Cir.

2010) (citation omitted).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  In ruling on a motion to dismiss, a court does not have to accept as true a complaint's legal conclusions.  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

In ruling on a motion to dismiss, courts can "consider certain materials— documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment."  *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## ARGUMENT

## I.   PLAINTIFFS FAIL TO ALLEGE A VIABLE EQUAL PROTECTION CLAIM.

The complaint raises two different equal protection claims.  First, Plaintiffs contend that the 35-submission limit for Exemptions 9 and 10 is unconstitutional because Exemptions 1, 4, 5 and 6 (the exemptions for "professionals who engage in marketing, graphic design, grant writing, and fine arts") have no 35-submission limitation, and the occupations covered by Exemptions 1, 4, 5, 6, 9, and 10 are similarly situated.  (ECF No. 1 at 10-11.)  Second, they contend that the limitation in Exemption 9 that excludes still photographers and photojournalists working in the motion picture industry violates their rights because the same limitation is not included in Exemptions 1, 4, 5 and 6 for "marketers, graphic designers, grant writers, and fine artists."  (*Id.* at 11-12.)  Both claims fail, for several reasons: AB 5 does not draw the distinctions alleged; to the extent it does draw distinctions they are not drawn between similarly situated groups; and, even if there were a distinction drawn between similarly situated groups, rational basis review would apply and that distinction would as a matter of law survive that review.

## A. The Limitations on Exemptions 9 and 10 Distinguish Based on Volume of Submissions and Industry, Not Occupation, and In Any Event Do Not Accord Differential Treatment to Similarly Situated Individuals.

The Equal Protection Clause forbids the government from "deny[ing] to any person within its jurisdiction the equal protection of the laws." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008). The first step in assessing Plaintiffs' equal protection claim is to identify the classification of groups. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166-67 (9th Cir. 2005); *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013). "The groups must be comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified." *Furnace*, 705 F.3d at 1030 (citation omitted). Plaintiffs cannot state an equal protection claim by "conflating all persons not injured into a preferred class receiving better treatment" than them. *Thornton*, 425 F.3d at 1167.

Plaintiffs' equal protection claims fail at the threshold because the 35-submission limitation distinguishes based on *volume*, not occupation, and the motion picture industry limitation distinguishes based on *industry*, not occupation. Still photographers and photojournalists and freelance writers, editors, and newspapers cartoonists on the one hand and marketers, graphic designers, grant writers and fine artists on the other hand ALL enjoy exemptions, regardless of occupation. Any distinction drawn based on occupation is not between the occupations in Exemptions 9 and 10 on the one hand, and the occupations in Exemptions 1, 4, 5 and 6 on the other, but between all the occupations that get exemptions and those that don't. A similar analysis applies to the motion picture industry limitation. Thus, to the extent Plaintiffs claim an impermissible distinction between these two sets of exemptions based on occupation, no such occupational distinction exists.

1    Even if there were an occupational distinction drawn between these categories

2    of exemptions, Plaintiffs cannot show that the two groups are similarly situated.

3    Simply put, marketers, graphic designers, grant writers, and fine artists are different

4    occupations and thus not "similarly situated" to photographers, photojournalists,

5    freelance writers, and editors. The Legislature could have reasonably concluded

6    that the former group does not perform the same type of work, and that an 35-

7    submission limit was not warranted for those occupations. (Bill Analysis, Senate

8    Committee on Labor Employment and Retirement 7/8/19 at pp. 8-10,

9    https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201920200

10    AB5 [last visited Jan. 24, 2020] (discussing factors taken into account regarding the

11    exemptions).) For example, grant writers and graphic designers do not necessarily

12    publish a high volume of articles annually with the same publisher, as

13    photographers, photojournalists, and freelance writers do. *See Allied Concrete and*

14    *Supply Co. v. Baker*, 904 F.3d 1053, 1062 (9th Cir. 2018) (rejecting equal

15    protection challenge to state statute because the distinction drawn by the Legislature

16    "is rational on its face"). And Plaintiffs do not explain how a 35-submission limit

17    would apply to marketers, and grant writers (for example), whereas that limit is

18    readily ascertainable for photographers, photojournalists, and freelance writers, by

19    reference to the statutory scheme. Cal. Lab. Code § 2750.3(c)(2)(B)(ix) & (x)

20    (defining "submission"). The challenge to the motion picture industry exclusion

21    fails under the same analysis.[3] Where the classifications do not contain similarly

22    situated people, there can be no equal protection violation. As the Ninth Circuit has

23    pointed out, "[e]vidence of different treatment of unlike groups does not support an

24    equal protection claim." *Thornton*, 425 F.3d at 1168.

---

26    [3] Plaintiffs also claim that photographers and photojournalists who record
video are similarly situated to "still photographers and photojournalists that *do not*

27    shoot video." (ECF No. 1 at 12 ¶ 70.) But AB 5 does not exclude from the
exemption individuals who shoot video, instead excluding "an individual who

28    works on motion pictures, which includes" projects for a broad segments, including
television, broadcast news, etc. Cal. Lab. Code §2750.3(c)(2)(B)(ix).

**B.   The Challenged Limitations on Exemptions 9 and 10 Satisfy the Applicable Rational Basis Standard of Review as a Matter of Law.**

Even if the limitations on exemptions in AB 5 drew distinctions based on occupation, and even if those occupations were similarly situated (and neither proposition is true), these limitations would survive an equal protection challenge as a matter of law.  Plaintiffs' equal protection claim fails because AB 5 is an employment regulation of general applicability that does not classify according to any suspect class, is therefore subject to deferential rational basis review, and satisfies that standard as a matter of law.

The limitations AB 5 places on Exemptions 9 and 10 do not implicate a suspect class and are therefore subject to rational basis review.  *See FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993).  It is clear that, "unless a [statutory] classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest." *Nordlinger v. Hahn*, 505 U.S 1, 10 (1992).  Under this standard, "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne*, 473 U.S. at 440.  When social or economic legislation is at issue, the Equal Protection Clause allows the States "wide latitude." *Id.*  As stated by the Supreme Court:

> Whether embodied in the Fourteenth Amendment or inferred from the Fifth, equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.

*Beach Communications, Inc.*, 508 U.S. at 313.

The challenged statutory classification is "presumed constitutional," *Allied Concrete and Supply Co.*, 904 F.3d at 1060, and the Complaint's allegations do not undermine this presumption here. In the area of economics and social welfare, a State does not violate the Equal Protection Clause if the classification has some "reasonable basis." *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78 (1911). "The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific." *Dandridge v. Williams*, 397 U.S. 471, 485 (1970) (citation omitted); *Clements v. Fashing*, 457 U.S. 957, 963 (1982) ("Classifications are set aside only if they are based solely on reasons totally unrelated to the pursuit of the State's goals and only if no grounds can be conceived to justify them."). For example, in *Gallinger v. Becerra*, the parties disputed the relevant groups for the similarly-situated analysis, and the Court of Appeals concluded that, even assuming that the two groups were similarly situated the challenged statute did not violate equal protection under rational basis. 898 F.3d 1012, 1016 (9th Cir. 2018); *see also Nader v. Cronin*, 620 F.3d 1214, 1218 (9th Cir. 2010). All the exemptions in AB 5, as well as the limitations on those exemptions challenged here, fall into the category of discretionary legislative line-drawing in generally applicable economic regulation, and are presumptively valid.

## II.   PLAINTIFFS FAIL TO ALLEGE A VIABLE FIRST AMENDMENT CLAIM.

The complaint alleges that AB 5's limitations on Exemptions 9 and 10 for "professional services" improperly discriminate based on the content of speech. (ECF No. 1 at 13-14 ¶¶ 74-79.) As discussed above, however, the distinctions drawn in these limitations are based on *volume and industry,* and even if based on occupation, are not based on the content of expression by those occupations. Accordingly, Plaintiffs cannot allege a viable First Amendment challenge.

## A.    The 35-Submission Limit Is Not a Content-Based Restriction.

"As a general rule, laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content based." *Turner Broad. Sys. v. FCC*, 512 U.S. 512 U.S. 622, 643 (1994).  On the other hand, "laws that confer benefits or impose burdens on speech without reference to the ideas or views expressed are in most instances content neutral." *Id.*  Usually, a regulation's purpose or justification will be evident on its face. *Id.* at 642; *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2231 (2015) ("As we have explained, a speech regulation is content based if the law applies to particular speech because of the topic discussed or the idea or message conveyed").

Plaintiffs claim that, by imposing a 35-submission limit on photographers, photojournalists, freelance writers, and editors but not imposing this cap on marketing, graphic design, grant writing, and fine arts, AB 5 violates the First Amendment. (*Id.* at 13 ¶¶ 74-76.) But this limitation does not reference an idea or viewpoint, or otherwise reflect a bias for or against any speech or viewpoint; it instead hinges on whether the individual providing the service is a still photographer, photojournalist, freelance writer, editor, or newspaper cartoonist. Cal. Lab. Code § 2750.3(c)(2)(B)(ix) & (x).  Plaintiffs argue that AB 5 somehow singles out "journalistic speech" for unfavorable treatment because it purportedly "grants an exemption free from the 35-submission limit to speaking professionals who engage in marketing, graphic design, grant writing, and fine arts," (ECF No. 1 at 13 ¶ 74), but fail to point to anything in AB 5 that predicates the statutory exemptions on the *substance* of a communication.  Instead, Plaintiffs argue that the 35-submission limitation on Exemptions 9 and 10 is impermissibly content-based because it hinges on whether Plaintiffs' members write about or photograph a topic in a manner that constitutes *marketing* versus a manner that constitutes journalistic reporting, or whether images are graphic design versus still photography.  This semantic argument fails.

12

1    In *Foti v. City of Menlo Park*, 146 F.3d 629, 636 (9th Cir. 1998), the court

2    upheld a First Amendment challenge to local regulation prohibiting signs on public

3    property but exempting real estate, safety, traffic, and other signs. *Foti* noted that if

4    enforcement of the ordinance requires that the content of the message be read to

5    assess if an exemption applies, then the ordinance is content-based. *Id.* at 636; *see*

6    *also Desert Outdoor Advertising, Inc. v. City of Moreno Valley*, 103 F.3d 814, 820

7    (9th Cir. 1996).  As explained above, the exemptions for freelance writers and still

8    photographers (among others) do not hinge on any aspect of the *content* they

9    produce, but on their occupational classification as writers or photographers.  Cal.

10   Lab. Code § 2750.3(c)(2)(B)(ix) & (x).  The limitation on that occupational

11   exemption challenged here is based on volume, and is even further afield from a

12   content-based restriction.

13   Cases have drawn a distinction where "the [challenged] exemption is plainly

14   'speaker-based,' not content-based".  *Hampsmire v. City of Santa Cruz*, 899 F.

15   Supp. 2d 922, 931 (N.D. Cal. 2012).  For example, the Ninth Circuit held that a

16   sign ordinance was not content-based where permitting "officers decide whether an

17   exemption applies by identifying the entity speaking through the sign without

18   regard for the *actual substance* of the message."  *G.K. Ltd. Travel v. City of Lake*

19   *Oswego*, 436 F.3d 1064, 1078 (9th Cir. 2006) (emphasis added).  The Supreme

20   Court has pointed out that "laws favoring some speakers over others demand strict

21   scrutiny *when the legislature's speaker preference reflects a content preference*."

22   *Reed*, 135 S. Ct. at 223 (citation omitted, emphasis added).  In the context of laws

23   that burden speech but do not ban it, the applicable test is "whether the speech-

24   burdening restrictions 'are *justified* without reference to the content of the regulated

25   speech."  *Doe v. Harris*, 772 F.3d 563, 575 (9th Cir. 2014) (emphasis in original).

26   Thus any First Amendment challenge fails because the volume limitations on

27   Exemptions 9 and 10 do not reference or burden content in any way.

28

## B.   The Motion Picture Exclusion Is Not Content Based.

Plaintiffs' challenge to the motion picture industry limitation on Exemption 9 fails for similar reasons.  They allege that AB 5's exclusion of "video recording" by photographers and photojournalists but not for marketing, graphic design, and fine artists, violates the First Amendment because the statutory exemption applies "based on the content of their speech—i.e., whether they record video to communicate news versus expression that is deemed marketing."  (ECF No. 1 at 14 ¶¶ 83-84.)  In fact, AB 5 excludes from the statutory exemption "an individual who works in the motion picture industry, which includes, but is not limited to projects for theatrical, television, internet streaming for any device, commercial productions, broadcast news, music videos, and live shows, whether distributed live or recorded for later broadcast, regardless of the distribution platform."  Cal. Lab. Code § 2750.3(c)(2)(B)(ix).  There is no content restriction to be found.

Plaintiffs' claim fails because the exclusion is based on industry—that is, on whether an individual "works on motion pictures" and other similar projects in a wide range of media.  The exclusion does not hinge on the *content* of the message. *See, e.g., Recycle for Change v. City of Oakland*, 856 F.3d 666, 670 (9th Cir. 2017) ("A content-based law is one that targets speech based on its communicative content or applies to particular speech because of the topic discussed or the idea or message expressed.") (citation omitted).  By contrast, *Arkansas Writers Project Inc. v. Ragland*, 481 U.S. 221 (1987), addressed a state law that exempted from taxation newspapers and "religious profession, trade and sports" publications, which the Court concluded impermissibly hinged on the content of the publication.  *Id.* at 230. As the Court subsequently noted in distinguishing its decision in that case, "[i]t would be error to conclude, however, that the First Amendment mandates strict scrutiny for any speech regulation that applies to one medium (or a subset thereof) but not others." *Turner Broadcasting Sys.*, 512 U.S. at 660.  Instead, heightened scrutiny is warranted were the challenged regulations are "structured in a manner

1   that raised suspicions that their objective was, in fact, the suppression of certain
2   ideas." *Id.* Heightened scrutiny is not appropriate "when the differential treatment
3   is justified by some special characteristic of the particular medium being
4   regulated." *Id.* at 660-61 (citation omitted). Here, the Complaint does not allege
5   any such facts. And it is not clear that individuals who work in marketing, graphic
6   design, grant writing, or as fine artists would also fit within the exclusion for "an
7   individual who works on motion pictures."

8          Ultimately, as explained above, "speaker-based laws demand strict scrutiny
9   when they reflect the Government's preference for the substance of what the
10  favored speakers have to say (or aversion to what the disfavored speakers have to
11  say)." *Turner Broadcasting Sys.*, 512 U.S. at 658; *Reed*, 135 S. Ct. at 2231 (2015).
12  The Complaint does not demonstrate that the challenged speaker-based exemption
13  somehow evinces a content preference, or that it otherwise "cannot be justified
14  without reference to the content of the regulated speech," or was adopted by the
15  Legislature "because of disagreement with the message" it conveys. *U.S. v.*
16  *Swisher*, 811 F.3d 299, 313 (9th Cir. 2016) (en banc). Where a challenged
17  regulation is content neutral, can be justified without reference to the content of the
18  regulated message, and there is no evidence that it was adopted due to disagreement
19  with the message conveyed, the First Amendment challenge fails. *Recycle for*
20  *Change*, 856 F.3d at 670.[4]

---

25  [4] In some situations, the Supreme Court held that strict scrutiny applied under
    Equal Protection where the challenged regulation directly regulated speech. *Police*
26  *Department of City of Chicago v. Mosley*, 408 U.S. 92, 101 (1972); *See also Carey*
    *v. Brown*, 447 U.S. 455 (1980) (addressing First and Fourteenth Amendment
27  challenges to a picketing statute). By contrast, AB 5 does not directly regulate
    speech. *See Wagner v. Federal Election Commission*, 793 F.3d 1, 33 (D.C. Cir.
28  2015).

1

**CONCLUSION**

2

For these reasons, the Court should dismiss the Complaint.[5]

3

4

Dated:  January 24, 2020

Respectfully submitted,

5

XAVIER BECERRA
Attorney General of California
TAMAR PACHTER
Supervising Deputy Attorney General

6

7

8

/s/ *Jose A. Zelidon-Zepeda*
JOSE A. ZELIDON-ZEPEDA
Deputy Attorney General
*Attorneys for Attorney General Xavier
Becerra, in his official capacity*

9

10

11

SA2019106422
21791164.docx

12

13

14

15

16

17

18

19

20

21

22

23

24

25

---

[5] Because Plaintiffs raise facial challenges to AB 5's exemptions, (ECF No. 1 at 15-16), they must establish that they are "unconstitutional in every conceivable application," or "seek[] to prohibit such a broad range of protected conduct that [they are] unconstitutionally overbroad." *Lone Star Security and Video, Inc. v. City of Los Angeles*, 827 F.3d 1192, 1197 (9th Cir. 2016) (citation omitted; brackets in original).  The Complaint does not do so.  To the extent Plaintiffs purport to raise an as-applied challenge, they have not alleged that the challenged provisions have been applied to them.  (*See generally* ECF No. 1.)

26

27

28