1  CALEB R. TROTTER, Cal. Bar No. 305195
2  Email: CTrotter@pacificlegal.org
   Pacific Legal Foundation
3  930 G Street
4  Sacramento, California 95814
   Telephone: (916) 419-7111
5  Facsimile: (916) 419-7747
6  JAMES M. MANLEY, Ariz. Bar No. 031820*
   Email: JManley@pacificlegal.org
7  Pacific Legal Foundation
8  3241 E. Shea Blvd. # 108
9  Phoenix, Arizona 85028
   Telephone: (916) 419-7111
10 Facsimile: (916) 419-7747
11 *Pro Hac Vice
12 *[Additional Counsel on Following Page]*
13 *Attorneys for Plaintiffs American Society of Journalists and Authors, Inc.,*
   *and National Press Photographers Association*
14
15              UNITED STATES DISTRICT COURT
16             CENTRAL DISTRICT OF CALIFORNIA
17                    WESTERN DIVISION
18                                    )
19 AMERICAN SOCIETY OF               )   Case No.: 2:19-cv-10645-PSG-KS
   JOURNALISTS AND AUTHORS,          )
20 INC., and NATIONAL PRESS          )   **REPLY IN SUPPORT OF MOTION**
   PHOTOGRAPHERS ASSOCIATION,        )   **FOR PRELIMINARY**
21                                   )   **INJUNCTION**
22            Plaintiffs,            )
                                     )   Judge: Hon. Philip S. Gutierrez
23      v.                           )   Hearing Date: March 09, 2020
                                     )   Time: 1:30 P.M.
24                                   )
   XAVIER BECERRA, in his official   )
25 capacity as Attorney General of the )
   State of California,              )
26                                   )
27            Defendant.             )
                                     )
28

---

Plaintiffs' Reply in Support of Motion          Case No.: 2:19-cv-10645-PSG-KS
for Preliminary Injunction

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JEREMY B. TALCOTT, Cal. Bar No. 311490
Email: JTalcott@pacificlegal.org
Pacific Legal Foundation
1212 W. Amerige Ave.
Fullerton, California 92833
Telephone: (916) 419-7111
Facsimile: (916) 419-7747

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iv

INTRODUCTION ....................................................................................... 1

ARGUMENT ............................................................................................... 2

   I.   Plaintiffs Seek a Prohibitory Injunction. ...................................... 2

  II.   Plaintiffs Are Likely to Succeed on the Merits. ............................. 4

 III.   Plaintiffs Are Suffering Irreparable Harm Due to AB 5. .............. 8

 IV.   The Balance of Hardships and Public Interest
           Favor Preliminary Relief. ........................................................... 11

CONCLUSION ......................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Freedom Def. Initiative v. King Cty.*,
  796 F.3d 1165 (9th Cir. 2015) .........................................................................3

*Anderson v. United States*,
  612 F.2d 1112 (9th Cir. 1979) ..........................................................................3

*Arc of Cal. v. Douglas*,
  757 F.3d 975 (9th Cir. 2014) ............................................................................9

*Cal. Trucking Assoc. v. Becerra*,
  No. 3:18-cv-02458, 2020 WL 248993 (S.D. Cal. Jan. 16, 2020)...................9, 11

*City of Ladue v. Gilleo*,
  512 U.S. 43 (1994).............................................................................................6

*Farris v. Seabrook*,
  677 F.3d 858 (9th Cir. 2012) ............................................................................2

*First Franklin Fin. Corp. v. Franklin First Fin. Ltd.*,
  356 F. Supp. 2d 1048 (N.D. Cal. 2005)...........................................................10

*Foti v. City of Menlo Park*,
  146 F.3d 629 (9th Cir. 1998),
  *as amended on denial of reh'g* (July 29, 1998) .............................................5, 8

*Giving Back Fund Inc. v. Miami Mktg. Grp. LLC*,
  2011 WL 13217774 (C.D. Cal. Jan. 20, 2011)................................................10

*Golden Gate Restaurant Ass'n v. City and Cty. of San Francisco*,
  512 F.3d 1112 (9th Cir. 2008) ........................................................................13

*Gonzales v. O Centro Espirita Beneficiente Uniao
  do Vegetal*, 546 U.S. 418 (2006) .....................................................................3

*Jewelers' Circular Pub. Co. v. Keystone Pub. Co.*,
  274 F. 932 (S.D.N.Y. 1921), *aff'd* 281 F. 83 (2d Cir. 1922)............................7

*Kiva Health Brands LLC v. Kiva Brands Inc.*,
   402 F. Supp. 3d 877 (N.D. Cal. 2019) ............................................................. 9–10

*Kobell v. Suburban Lines, Inc.*,
   731 F.2d 1076 (3d Cir. 1984) ............................................................................ 10

*Latta v. Otter*,
   771 F.3d 496 (9th Cir. 2014) ............................................................................. 11

*Legal Aid Soc. of Hawaii v. Legal Services Corp.*,
   961 F. Supp. 1402 (D. Haw. 1997) ..................................................................... 3

*Metromedia Broad. Corp. v. MGM/UA Entm't Co., Inc.*,
   611 F. Supp. 415 (C.D. Cal. 1985) ................................................................... 10

*Miller for & on Behalf of N.L.R.B. v. California Pac. Med. Ctr.*,
   991 F.2d 536 (9th Cir. 1993), *on reh'g*, 19 F.3d 449 (9th Cir. 1994) ............... 10

*Minneapolis Star & Tribune Co. v. Minnesota Comm'r of Revenue*,
   460 U.S. 575 (1983) ............................................................................................. 6

*Nixon v. Shrink Missouri Gov't PAC*,
   528 U.S. 377 (2000) ............................................................................................. 7

*O Centro Espirita Beneficiente Uniao do Vegetal v. Ashcroft*,
   389 F.3d 973 (10th Cir. 2004) ............................................................................. 3

*Olson v. State of California*,
   No. 2:19-cv-10956, (C.D. Cal. Feb. 10, 2020) ............................................... 9, 11

*Reed v. Town of Gilbert, Ariz.*,
   135 S. Ct. 2218 (2015) ..................................................................................... 5, 6

*Sammartano v. Cty. of Carson City*,
   303 F.3d 959 (9th Cir. 2002) ............................................................................. 12

*Sanders County Republican Cent. Committee v. Bullock*,
   698 F.3d 741 (9th Cir. 2012) ............................................................................ 4, 8

*Sorrell v. IMS Health Inc.*,
   564 U.S. 552 (2011) ............................................................................................. 6

*Stormans, Inc. v. Selecky,*
   586 F.3d 1109 (9th Cir. 2009) ...........................................................11

*Tanner Motor Livery, Ltd. v. Avis, Inc.,*
   316 F.2d 804 (9th Cir. 1963) ...........................................................3, 11

*Thalheimer v. City of San Diego,*
   645 F.3d 1109 (9th Cir. 2011) ...........................................................12

*Turner Broad. Sys., Inc. v. F.C.C.,*
   512 U.S. 622 (1994) ...........................................................................8

*Washington Capitols Basketball Club, Inc. v. Barry,*
   419 F.2d 472 (9th Cir. 1969) ...............................................................3

*Winter v. National Resources Defense Council, Inc.,*
   555 U.S. 7 (2008) ...............................................................................2

**Statutes**

Cal. Lab. Code § 2750.3(a)(3) ..........................................................11–12

Cal. Lab. Code § 2750.3(c)(2)(B)(i) .........................................................7

Cal. Lab. Code § 2750.3(c)(2)(B)(ix) .......................................................1

Cal. Lab. Code § 2750.3(j)........................................................................11

Cal. Lab. Code § 2750.3 ............................................................................1

Cal. Lab. Code § 2750.3(c)(2)(B)(ix)-(x) .................................................6

Cal. Lab. Code § 2750.3(c)(2)(B)(x) ........................................................1

National Labor Relations Act section 10(j) ............................................10

**Other Authorities**

Exemptions from the overtime laws,
   Cal. Dept. of Industrial Relations,
   https://www.dir.ca.gov/dlse/faq_overtimeexemptions.htm.................4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Senate Bill 868 (2020),
   http://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=
   201920200SB868&firstNav=tracking..................................................................12

https://twitter.com/LorenaSGonzalez/status/1225530024008278016.....................12

11A Wright, et al., Federal Practice and Procedure § 2948 (3d ed.)........................3

On behalf of their members, Plaintiffs American Society of Journalists and Authors, Inc. and the National Press Photographers Association respectfully respond to Defendant's Opposition to Plaintiffs' Motion for Preliminary Injunction, Dkt. # 36 ("*Opp'n*").

## INTRODUCTION

With the goal of remedying worker misclassification, the California legislature enacted Assembly Bill 5 (AB 5, codified at Cal. Lab. Code § 2750.3, et seq.). However, AB 5 includes a laundry list of exemptions. Further complicating matters, the legislature selectively limited AB 5's exemption for "professional services" based on the content of workers' speech. Rather than provide full exemptions as it does for marketing, grant writing, and graphic design, AB 5 singles out the speech of freelance writers, editors, newspaper cartoonists, still photographers, and photojournalists like Plaintiffs' members and imposes strict limits on their speech. As a result, Plaintiffs' members have already lost work and income, in addition to suffering unjustified burdens on their constitutional rights. A law that favors publication of marketing and disfavors publication of journalism results in the suppression of certain speech and ideas and is therefore presumptively invalid.

Plaintiffs challenge the constitutionality of AB 5's definition of "professional services," both facially and as-applied. Plaintiffs seek a preliminary injunction of AB 5 only to the extent it draws unconstitutional content-based distinctions about who can independently contract ("freelance"), limiting certain speakers to 35 submissions per client, per year, and precluding some freelancers from making video recordings. The only "professional services" subject to AB 5's 35-submission limit are freelance writers, editors, newspaper cartoonists, still photographers, and photojournalists. Cal. Lab. Code § 2750.3(c)(2)(B)(x). Moreover, only photographers and photojournalists are specifically excluded from the definition of "professional services" if they shoot video. *Id*. § 2750.3(c)(2)(B)(ix).

Contrary to Defendant's assertions, Plaintiffs seek a prohibitory injunction to enjoin the arbitrary and content-based distinctions imposed by AB 5's definition of professional services, which severely burden Plaintiffs' First and Fourteenth Amendment rights to speak as journalists. Because Plaintiffs' First Amendment rights are directly burdened, strict scrutiny applies to both of Plaintiffs' claims, and Defendant has failed to even attempt to meet his burden to justify AB 5 under any heightened scrutiny standard. Further, Plaintiffs have sufficiently shown that they, not Defendant, suffer irreparable harm due to AB 5's 35-submission limits and video ban, and that the balance of harms and public interest favor preliminary relief enjoining those aspects of the law. As a result, for the reasons discussed here, in Plaintiffs' Memorandum in Support of their Motion for Preliminary Injunction, Dkt. # 12–1 ("*PI Memo*."), and in Plaintiffs' Response in Opposition to Defendants' Motions to Dismiss, Dkt. # 37 the Court should preliminarily enjoin AB 5's 35-submission limits and video ban.

## ARGUMENT

## I.      Plaintiffs Seek a Prohibitory Injunction.

Plaintiffs seek a preliminary injunction prohibiting Defendant from enforcing the 35-submission limits and video ban; they are not, as Defendant suggests, seeking a mandatory injunction or seeking to alter the status quo. *Opp'n* at 7:3–6; 17:22–28.

*Winter v. National Resources Defense Council*, *Inc*., 555 U.S. 7, 20 (2008), sets out the test for prohibitory injunctions, like the one Plaintiffs seek here. In *Farris v. Seabrook*, 677 F.3d 858, 861 (9th Cir. 2012), the Ninth Circuit applied *Winter* to uphold a preliminary injunction prohibiting enforcement of a campaign finance regulation that burdened First Amendment rights. Plaintiffs seek precisely the same sort of prohibitory relief granted in *Farris*: prohibiting Defendant from enforcing the challenged speech restrictions. Accordingly, Plaintiffs are entitled to a preliminary injunction because the *Winter* factors are met, as explained in their Preliminary

---

Injunction Memorandum, their Response in Opposition to Defendant's Motion to Dismiss, and herein.

Defendant's argument that Plaintiffs seek a "disfavored" mandatory injunction to change the status quo, is incorrect. *Opp'n* at 7:3–6; 17:22–28. "A mandatory injunction commands performance of certain acts whereas a prohibitory injunction prohibits the performance of certain acts." *Legal Aid Soc. of Hawaii v. Legal Services Corp.*, 961 F. Supp. 1402, 1408 (D. Haw. 1997) (citing *Anderson v. United States*, 612 F.2d 1112, 1114–15 (9th Cir. 1979)). *See also Am. Freedom Def. Initiative v. King Cty.*, 796 F.3d 1165, 1173 (9th Cir. 2015) (holding "an order requiring Metro to publish an ad previously unpublished" is a "mandatory injunction"). Plaintiffs do not ask this Court to compel Defendant to take any action. Plaintiffs seek an injunction to stop Defendant from enforcing the 35-submission limits and video ban on freelancers.

The prohibitory injunction Plaintiffs seek will maintain, not alter, the status quo. In this context, the status quo is the last, uncontested status before the dispute developed. *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 808–09 (9th Cir. 1963); *Washington Capitols Basketball Club, Inc. v. Barry*, 419 F.2d 472, 476 (9th Cir. 1969) (to determine status quo, it is "necessary to examine what constituted the last, uncontested status of the parties"). *See also* 11A Wright, et al., Federal Practice and Procedure § 2948 (3d ed.). If a party has recently disturbed the status quo, an injunction "to reverse its actions … restores, rather than disturbs, the status quo ante, and is thus not an exception to the rule." *O Centro Espirita Beneficiente Uniao do Vegetal v. Ashcroft*, 389 F.3d 973, 1013 (10th Cir. 2004), *aff'd and remanded sub nom. Gonzales v. O Centro Espirita Beneficiente Uniao do Vegetal*, 546 U.S. 418 (2006) (McConnell, J., concurring). Here, the "last, uncontested status of the parties" pre-dates the January 1, 2020, effective date of AB 5.[1] Therefore, a preliminary

---

[1] Defendant mistakenly seeks to back-date the change in status quo to April 2018, to include the California Supreme Court's issuance of the *Dynamex* decision. *See*

injunction enjoining enforcement of the 35-submission and video recording limits would restore the status quo. The *Winter* test is appropriate for the prohibitory injunction Plaintiffs request, and they meet that test.

## II. Plaintiffs Are Likely to Succeed on the Merits.

Plaintiffs are likely to succeed on the merits of both their Equal Protection and First Amendment claims. *See Sanders County Republican Cent. Committee v. Bullock*, 698 F.3d 741, 744 (9th Cir. 2012) ("When seeking a preliminary injunction in the First Amendment context, the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the restriction.").

Defendant's merits arguments are copied mostly word-for-word from his motion to dismiss, with only minor changes. Plaintiffs' response in opposition to Defendant's motion to dismiss comprehensively explains why Plaintiffs have demonstrated colorable First Amendment and Equal Protection claims. In the interests of economy, Plaintiffs incorporate those legal arguments here to show their likelihood of success on the merits, and provide only a brief summary of those arguments here in order to address the few slight differences in Defendant's opposition to Plaintiffs' motion for preliminary injunction.

As explained in Plaintiffs' Resp. to M. to Dismiss, Defendant fundamentally misapplies both the text of AB 5 and the relevant caselaw. Under AB 5 freelance writers, editors, newspaper cartoonists, still photographers, and photojournalists are limited to 35 submissions per client, and completely prohibited from using video

---

*Opp'n.* at 17. But, as Defendant concedes, AB 5 "*codified* the [*Dynamex*] ABC test *and expanded its scope*." *Opp'n* at 3:6–7. Plaintiffs' members are largely exempt from the wage orders at issue in *Dynamex*, *see* https://www.dir.ca.gov/dlse/faq_overtimeexemptions.htm, thus it was only after AB 5 went into effect that the status quo changed, subjecting Plaintiffs to the ABC test and the unconstitutional definition of professional services at issue here.

regardless of the platform. These limits do not apply to marketing, grant writing, fine art, or graphic design; they are based solely on the "function or purpose" and "subject matter" of the speech. *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2227, 2230 (2015). Defendant's primary argument, both here and in support of his motion to dismiss, is that strict scrutiny should not apply because AB 5 does not discriminate based on viewpoint. But this argument has been rejected repeatedly by the Supreme Court. *See Reed*, 135 S. Ct. at 2230 (applying strict scrutiny because "speech regulation targeted at specific subject matter is content based even if it does not discriminate among viewpoints within that subject matter."). *See also Foti v. City of Menlo Park*, 146 F.3d 629, 636 (9th Cir. 1998), *as amended on denial of reh'g* (July 29, 1998) (striking down content-based sign code that exempted real estate "open house" and other signs). Defendant continues to ignore all this, confusing the distinction between viewpoint-based laws and content-based laws. *See* P.s' Resp. to M. to Dismiss at 8–11.[2]

Defendant also mischaracterizes the onerous language of AB 5 with respect to videographers by lumping all videographers, including journalists into the "motion picture industry." Visual journalists who shoot video are not a part of the motion picture industry. However, by including "broadcast news" "live shows" and "internet streaming," in its definition of "motion picture industry," AB 5 erroneously brings journalism into its one-size-fits-all definition of "motion picture industry." Writers and still photographers use their cameras or smart phones to create "broadcast news", "live shows", and "internet streaming" for journalistic purposes.

---

[2] Defendant also cites *Foti*, but misstates the holding of that case in his most recent filing. *See Opp'n* at 12:15–17. *Foti* held that plaintiffs were likely to succeed on the merits of their claim that a sign code was unconstitutionally content-based because it exempted "real estate signs and safety, traffic, and public informational signs." 146 F.3d at 636. *Foti* did not, as Defendant erroneously claims, "uph[o]ld [the ordinance] against a First Amendment challenge." *See Opp'n* at 12:16.

This is not a shift in industry, as Defendant claims, but a shift in the use of a certain medium, yet under AB 5, only journalists are penalized for this choice.

As explained in detail in Plaintiffs' response to Defendant's motion to dismiss, content-based distinctions like those drawn by AB 5 are "presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 135 S. Ct. at 2226; *Sorrell v. IMS Health Inc.* 564 U.S. 552, 565–66 (2011). The burden is on Defendant to justify a rule that singles out freelance writers, editors, newspaper cartoonists, still photographers, and photojournalists—including videographers—from the definition of professional services that applies to other speakers. *Id.* Contrary to Defendant's suggestion, AB 5's professional services exemption does not simply "affect" the press. *Opp'n* at 13:16. Rather, the exemption singles out only "content produced by a still photographer or photojournalist" and "content by a freelance journalist" as subject to the 35-submission limit, and only still photographers or photojournalists are subject to the video ban. *See* Cal. Lab. Code § 2750.3(c)(2)(B)(ix)-(x). Like the paper and ink taxes struck down in *Minneapolis Star & Tribune Co. v. Minnesota Comm'r of Revenue*, 460 U.S. 575 (1983), AB 5's professional services exemption "single[s] out the press for special treatment," imposing a burden on First Amendment rights that can only be justified if it is necessary to achieve a compelling government interest. *Id.* at 582.

Because Defendant fundamentally misunderstands the nature of content-based laws, he makes no attempt to meet strict (or even intermediate) scrutiny. Defendant bears a "heavy burden," which requires evidence of a causal link between the specific limits AB 5 imposes on "professional services" that are challenged here and a compelling government interest. *See City of Ladue v. Gilleo*, 512 U.S. 43, 52 (1994) (Regulatory exemptions "may diminish the credibility of the government's rationale for restricting speech in the first place.").

Defendant offers only irrelevant speculation about what the Legislature "could have reasonably concluded…." *Opp'n* at 10:3–8. But speculation is inadequate to carry Defendant's burden. *Nixon v. Shrink Missouri Gov't PAC*, 528 U.S. 377, 379 (2000) ("This Court has never accepted mere conjecture as adequate to carry a First Amendment burden."). And the single committee analysis on which Defendant relies does not even address the distinctions between speech that give rise to Plaintiffs' claims. *See Opp'n* at 10:3–8.

Nor does Defendant's detailed parsing of AB 5's exemption for marketing speech provide any justification for the content-based distinctions drawn by AB 5's professional services exemption. Rather, Defendant only highlights the content-based problems with the exemption. *Opp'n* at 12 n.6.

Defendant does not dispute the premise that "writers of marketing materials, perhaps news releases, can freelance freely; but if they write articles about that same news release, they are subject to the 35-submission limit." *Opp'n* at 12 n.6 (quoting *PI Memo.* at 15). Instead, Defendant argues that a news release can only fit within the professional services exemption for marketing if it is "original and creative in character and the result of which depends primarily on the invention, imagination, or talent of the employee…." *Id.* (quoting Cal. Lab. Code § 2750.3(c)(2)(B)(i)).

In reality a press release and a news article, as well as accompanying photographs, are both highly creative works. *See, e.g., Jewelers' Circular Pub. Co. v. Keystone Pub. Co.*, 274 F. 932, 934 (S.D.N.Y. 1921), *aff'd* 281 F. 83 (2d Cir. 1922) ("no photograph, however simple, can be unaffected by the personal influence of the author"). But even if Defendant's characterization of news releases were to be credited, it would only shows the depth of the content-based inquiry required to decide if AB 5's 35-submission limit or video ban applies. The government official would first read the work to distinguish between "journalism" and "marketing," and then the government reader would decide if the speech is sufficiently "original and creative in character" or if it "depends primarily on the invention, imagination, or

talent" of the writer. The same inquiry would be needed to decide if a video is the work of a photojournalist or a marketing photographer. These unmoored subjective judgments are based entirely on the content of what the government official reads or views. *Foti*, 146 F.3d at 636. Defendant makes no attempt to offer evidence in support of this content-based line drawing.

Plaintiffs have made colorable First Amendment and Equal Protection claims, *see* Resp. to M. to Dismiss at 11–15, and so the burden has "shift[ed] to the government to justify the restriction." *Sanders County Republican Cent. Committee*, 698 F.3d at 744. Because Defendant has made no attempt to meet any form of heightened scrutiny in his opposition to Plaintiffs' motion for preliminary injunction, Plaintiffs are likely to succeed on the merits of their Equal Protection and First Amendment claims.[3]

## III. Plaintiffs Are Suffering Irreparable Harm Due to AB 5.

Despite the fact that Plaintiffs have raised substantial First and Fourteenth Amendment claims in this case, Defendant seeks to avoid his burden of justifying AB 5's restrictions by claiming: (1) Plaintiffs have unduly delayed in seeking preliminary relief; (2) the State will suffer irreparable harm if preliminary relief is

---

[3] Even if Defendant were correct that the regulation was content-neutral—which it is not—a content-neutral regulation will only be sustained if it (1) "furthers an important or substantial governmental interest"; (2) "if the governmental interest is unrelated to the suppression of free expression"; and (3) "if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 662 (1994). Defendant has not demonstrated that the regulations applied to journalists in AB 5 further an important governmental interest that is not already served by the rules AB 5 applies to marketers. Defendant also fails to demonstrate that a First Amendment restriction on journalists of 35 submissions per year, per client, and a complete video ban on freelance journalists is essential to the furtherance of any such interest. In fact, the author of AB 5 admitted that the limit was arbitrary. *See PI Memo.* at 20 n.8.

---

granted; and (3) Plaintiffs seek to change the status quo. *Opp'n.* at 16–17. All of Defendant's arguments fail.

First, multiple courts, including the Central District, have previously rejected Defendant's argument that parties unduly delayed in seeking preliminary relief by not challenging AB 5 immediately after its enactment. In *Olson v. State of California*, No. 2:19-cv-10956, civil minute order at *20 n.17 (C.D. Cal. Feb. 10, 2020), the Central District held that a "four-month delay in seeking an injunction against AB 5's enforcement does not undermine the irreparable harm analysis…." Likewise, the Southern District of California recently stated that it "is not persuaded that a two month delay in filing the [preliminary injunction] motion wholly undermines their showing of irreparable harm." *Cal. Trucking Assoc. v. Becerra*, No. 3:18-cv-02458, 2020 WL 248993, at *10 n.12 (S.D. Cal. Jan. 16, 2020).

Here, Plaintiffs filed their motion for preliminary injunction on December 20, 2019, three days after filing their Complaint, and just 2 months and 26 days after AB 5 was signed by the Governor.[4] As previously held by this Court and the Southern District in similar cases challenging other aspects of AB 5 noted above, the timing of Plaintiffs' complaint and motion for preliminary injunction does not undermine their showing of irreparable harm.

There was no unreasonable delay here, and the cases Defendant cites bear that out. There is no bright line rule that delay of any length precludes a finding of irreparable injury; "delay is but a single factor to consider in evaluating irreparable injury," and "courts are 'loath to withhold relief solely on that ground.'" *Kiva Health Brands LLC v. Kiva Brands Inc.*, 402 F. Supp. 3d 877, 897 (N.D. Cal. 2019) (quoting *Arc of Cal. v. Douglas*, 757 F.3d 975, 990 (9th Cir. 2014)).

The cases relied on by Defendant provide no support for his position that Plaintiffs' motion for preliminary injunction was untimely. None of Defendant's

---

[4] Even though AB 5 was enacted on September 18, 2019, it did not take effect until January 1, 2020—after Plaintiffs sought preliminary relief.

cases addresses constitutional claims and all involve significant delay between the filing of a complaint and a motion for preliminary relief. *See Opp'n* at 16:25–17:1.

In *First Franklin Fin. Corp. v. Franklin First Fin. Ltd.*, 356 F. Supp. 2d 1048, 1049–50, 1054 (N.D. Cal. 2005), a plaintiff in a trademark infringement case failed to discover competing uses of its mark for 11 years before waiting two months after discovering the competing use to send a cease-and-desist letter and file a complaint. In *Metromedia Broad. Corp. v. MGM/UA Entm't Co., Inc.*, 611 F. Supp. 415, 420 (C.D. Cal. 1985), a plaintiff did not merely seek preliminary relief four months after an adverse action, but sought to "reverse the results of four months' negotiation" and require the defendant to accept an alternative financial deal through the issuance of preliminary relief. In *Kiva Health Brands LLC*, 402 F. Supp. 3d at 898, the court denied preliminary relief to a trademark infringement plaintiff who waited nearly three years from discovering a potentially infringing mark before sending a cease-and-desist letter, and another four months to file suit, then an additional three months before seeking preliminary relief. In *Giving Back Fund Inc. v. Miami Mktg. Grp. LLC*, 2011 WL 13217774, at *4 (C.D. Cal. Jan. 20, 2011), the plaintiffs waited over two months between filing their complaint and seeking a temporary restraining order. *See also Opp'n* at 16:16–17 (citing *Miller for & on Behalf of N.L.R.B. v. California Pac. Med. Ctr.*, 991 F.2d 536, 539 (9th Cir. 1993), *on reh'g*, 19 F.3d 449 (9th Cir. 1994) (eight months between filing unfair labor practice charge and seeking a preliminary injunction pursuant to section 10(j) of the National Labor Relations Act); *Kobell v. Suburban Lines, Inc.*, 731 F.2d 1076, 1101 (3d Cir. 1984) (six month delay in seeking section 10(j) relief). Defendant has therefore produced no case that supports the proposition that a "delay" of barely three months between enactment of a statute and the filing of a complaint (and filing a motion for preliminary relief days later) is tardy.

Second, Defendant claims that it is the State that would suffer irreparable harm should the Court grant preliminary relief. *Opp'n* at 17. "But the Ninth Circuit

has distanced itself from this understanding of a state's irreparable injury." *Olson*, No. 2:19-cv-10956, at *21 (citing *Latta v. Otter*, 771 F.3d 496, 500 n.1 (9th Cir. 2014)). Indeed, contrary to Defendant's assertion that a preliminary injunction would "prevent the State from enforcing laws designed to address … problem[s] of [employee] misclassification," *Opp'n* at 17:16–17, "any irreparable injury to Defendants would be mitigated by the fact that even if a preliminary injunction were granted," *Olson*, No. 2:19-cv-10956, at *21, unchallenged provisions of AB 5 ensure that the traditional pre-AB 5 test for preventing misclassification (*Borello*) remains available to protect California workers. *Cal. Trucking Assoc.*, 2019 WL 7372056, slip op. granting TRO at *2 (citing Cal. Lab. Code § 2750.3(a)(3)).

Third, as discussed above, the prohibitory injunction Plaintiffs seek will maintain, not alter, the last, uncontested status before the dispute developed. *Tanner Motor Livery, Ltd.*, 316 F.2d at 808–09. And an injunction here would not affect the new enforcement mechanisms created by AB 5. *See* Cal. Lab. Code § 2750.3(j).

### IV.     The Balance of Hardships and Public Interest Favor Preliminary Relief.

Defendant has failed to offer any argument that the balance of harms weighs in favor of denying preliminary relief. Nevertheless, in assessing the balance of hardships, the court "balance[s] the interests of all parties and weigh[s] the damage to each." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009). Because of AB 5, Plaintiffs' members have lost work and income, *see* Supplemental Dec. of Randy Dotinga ¶¶ 4–7, Dotinga Dec. ¶ 14 (Dkt. # 23), Clark Dec. ¶ 20 (Dkt. # 25), and suffered unjustified burdens on their constitutional rights to photograph, write, and publish, and will continue to do so until the challenged provisions are enjoined.

In contrast, should the Court preliminarily enjoin the 35-submission limits and video ban, Defendant would still retain the ability to address worker misclassification. Indeed, with a preliminary injunction, Plaintiffs would simply be treated the same as the other groups included within AB 5's professional services

exemption: subject to the classic pre-AB 5 *Borello* standard for determining employment status as set out at Cal. Lab. Code § 2750.3(a)(3). Thus, the only "harm" suffered by Defendant should the 35-submission limits and video ban be preliminarily enjoined, is the requirement to treat Plaintiffs' members like the other professional services exempted by AB 5, and apply the multi-factor *Borello* test rather than the strict three-part ABC test *codified* in AB 5. The balance of harms therefore tip decidedly in favor of Plaintiffs and preliminary relief.

The public interest also favors preliminary relief, because it "is always in the public interest to prevent the violation of a party's constitutional rights," *Sammartano v. Cty. of Carson City*, 303 F.3d 959, 974 (9th Cir. 2002) (quote omitted), and courts "have consistently recognized the significant public interest in upholding First Amendment principles." *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1129 (9th Cir. 2011).

In contrast, and as discussed above, the public's interest in addressing worker misclassification is not at all threatened by preliminarily enjoining the 35-submission limits and video ban in this case. Just as the legislature determined that the public's interest was not harmed by exempting marketing, grant writing, graphic design, and fine art from AB 5's strict ABC test while leaving them subject to the standard *Borello* test, the same is true for journalists. In fact, the primary author of AB 5 recently acknowledged this to be the case. On February 6, 2020, Assemblywoman Lorena Gonzalez announced that she is introducing amendatory legislation to remove the 35-submission limits.[5] Therefore, Defendant's claims that the public's interest in addressing worker misclassification could not be sufficiently

---

[5] https://twitter.com/LorenaSGonzalez/status/1225530024008278016. Another bill, SB 868, was also recently introduced that would remove the 35-submission limit for writers, editors, and newspaper cartoonists. http://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=201920200SB868&firstNav=tracking.

met without the strict ABC test are fatally belied by AB 5's own exemptions for similarly situated professions and by the actions of AB 5's prime sponsor.[6]

**CONCLUSION**

A preliminary injunction is appropriate to maintain the status quo and enjoin enforcement of AB 5 to the extent it imposes a 35-submission limit on certain speakers and to the extent it limits the definition of professional services based on what medium of expression a speaker uses.

DATED: February 24, 2020.

Respectfully submitted,

By /s/ Caleb R. Trotter
CALEB R. TROTTER

CALEB R. TROTTER
(Cal. Bar No. 305195)
Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747
Email: CTrotter@pacificlegal.org

JAMES M. MANLEY
(Ariz. Bar No. 031820*)
Pacific Legal Foundation
3241 E. Shea Blvd. #108
Phoenix, Arizona 85028
Telephone: (916) 419-7111
Facsimile: (916) 419-7747
Email: JManley@pacificlegal.org

---

[6] Defendant's citation to *Golden Gate Restaurant Ass'n v. City and Cty. of San Francisco*, 512 F.3d 1112, 1127 (9th Cir. 2008), demands no contrary result. *See Opp'n* at 19. There, the Court noted that the public interest is not always served by declining to enjoin duly enacted legislation. *Id*. However, the Court cited instances of legislation held to be unconstitutional as a primary example of injunctions that *do not* undermine the public interest. *Id*.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Pro Hac Vice

JEREMY B. TALCOTT
(Cal. Bar No. 311490)
Pacific Legal Foundation
1212 W. Amerige Ave.
Fullerton, California 92833
Telephone: (916) 419-7111
Facsimile: (916) 419-7747
Email: JTalcott@pacificlegal.org

*Attorneys for Plaintiffs American Society of
Journalists and Authors, Inc., and National
Press Photographers Association*