XAVIER BECERRA
Attorney General of California
TAMAR PACHTER
Supervising Deputy Attorney General
JOSE A. ZELIDON-ZEPEDA
Deputy Attorney General
State Bar No. 227108
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA 94102-7004
  Telephone: (415) 510-3879
  Fax: (415) 703-1234
  E-mail: Jose.ZelidonZepeda@doj.ca.gov
*Attorneys for Attorney General Xavier Becerra, in his official capacity*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **AMERICAN SOCIETY OF JOURNALISTS AND AUTHORS; ET AL.,**<br><br>Plaintiffs,<br><br>**v.**<br><br>**ATTORNEY GENERAL XAVIER BECERRA, in his official capacity,**<br><br>Defendant. | 2:19-cv-10645-PSG<br><br>**REPLY SUPPORTING DEFENDANT'S MOTION TO DISMISS**<br><br>Date: March 23, 2020<br>Time: 1:30 P.M.<br>Courtroom: 6A, 6th Floor<br>Judge: Hon. Philip S. Gutierrez<br>Trial Date: Not set<br>Action Filed: December 17, 2019 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...........................................................................................................1
ARGUMENT....................................................................................................................2
    I.    Plaintiffs' First Amendment Claim Fails................................................2
        A.    AB 5's Challenged Exemptions Distinguish Among Workers Based on Their Occupation and Industry, Not the Content of Their Speech .......................................................2
        B.    AB 5 Is a Law Governing Employment Generally Instead of Speech, and Thus Raises No First Amendment Concerns. ..................................................................................................4
    II.    Plaintiffs' Equal Protection Claim Fails. ...............................................6
CONCLUSION................................................................................................................9

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Allied Concrete & Supply Co. v. Baker*
   904 F.3d 1053 (9th Cir. 2018) ................................................................................ 6

*Angelotti Chiropractic v. Baker*
   791 F.3d 1075 (9th Cir. 2015) ................................................................................ 8

*Carey v. Brown*
   447 U.S. 455 (1980) ............................................................................................... 9

*Corp. of the Catholic Archbishop of Seattle v. City of Seattle*
   28 F. Supp. 3d 1163 (W.D. Wash. 2014) ............................................................... 7

*Doe v. Harris*
   772 F.3d 563 (9th Cir. 2014) ............................................................................. 4, 5

*Furnace v. Sullivan*
   705 F.3d 1021 (9th Cir. 2013) ................................................................................ 7

*Hampsmire v. City of Santa Cruz*
   899 F. Supp. 2d 922 (N.D. Cal. 2012) ............................................................... 3, 4

*Heller v. Doe*
   509 U.S. 312 (1993) ............................................................................................... 8

*Hill v. Colorado*
   530 U.S. 703 (2000) ............................................................................................... 4

*Hood Canal Sand and Gravel, LLC v. Brady*
   129 F. Supp. 3d 1118 (W.D. Wash. 2015) ............................................................. 8

*HSH, Inc. v. City of El Cajon*
   44 F. Supp. 3d 996 (S.D. Cal. 2014) ...................................................................... 8

*Interpipe Contracting, Inc. v. Becerra*
   898 F.3d 879 (9th Cir. 2018) .................................................................................. 5

*Merrifield v. Lockyer*
   547 F.3d 978 (9th Cir. 2008) .................................................................................. 6

# TABLE OF AUTHORITIES
## (continued)

Page

*Minneapolis Star & Tribune Co. v. Minn. Com'r of Revenue*
    460 U.S. 575 (1983) ...................................................................................... 5

*Neilson v. Union Bank of California, N.A.*
    290 F. Supp. 2d 1101 (C.D. Cal. 2003) ........................................................ 8

*Olson v. California*
    Case No. CV 19-10956-DMG, 2020 WL 905572
    (C.D. Cal. Feb. 10, 2020) ........................................................................ 6, 8

*Police Department of City of Chicago v. Mosley*
    408 U.S. 92 (1972) ....................................................................................... 9

*Recycle for Change v. City of Oakland*
    856 F.3d 666 (9th Cir. 2017) ............................................................ 2, 3, 4, 6

*Reed v. Town of Gilbert, Ariz.*
    135 S. Ct. 2218 (2015) ............................................................................. 3, 6

*Safeway Inc. v. City & Cty. of San Francisco*
    797 F. Supp. 2d 964 (N.D. Cal. 2011) ......................................................... 7

*Thornton v. City of St. Helens*
    425 F.3d 1158 (9th Cir. 2005) ...................................................................... 7

*Turner Broad. Sys. v. FCC*
    512 U.S. 512 U.S. 622, 643 (1994) ...................................................... 3, 5, 6

*U.S. v. Swisher*
    811 F.3d 299 (9th Cir. 2016) (en banc) ................................................... 5, 6

*Wagner v. Federal Election Comm'n*
    793 F.3d 1 (D.C. Cir. 2015) ......................................................................... 9

# TABLE OF AUTHORITIES
## (continued)
Page
**STATUTES**

California Labor Code
 § 2750.3(c)(2)(B)(ix) & (x) ................................................................................ 2

**OTHER AUTHORITIES**

Religious Land Use and Institutionalized Persons Act .............................................. 7

**CONSTITUTIONAL PROVISIONS**

United States Constitution
 First Amendment ........................................................................................*passim*

# INTRODUCTION

Plaintiffs do not dispute that AB 5 is a generally applicable statutory scheme, designed to address the systematic misclassification of workers as independent contractors, and, concomitantly, to address the inequities such misclassification inflicts on working Californians, employers who properly classify their workers, and the taxpayers who foot the bill for misclassification. Plaintiffs do not challenge AB 5 as a whole, but instead claim that limitations on two of its exemptions violate their constitutional rights under the Equal Protection Clause and the First Amendment.

Plaintiffs' arguments in opposition to the motion to dismiss rest entirely on the premise that their claims merit heightened scrutiny. But that argument is incorrect. Plaintiffs' First Amendment claim is not subject to heightened scrutiny and fails because the challenged limitations on exemptions to AB 5 do not regulate speech; instead, they address the relationship between workers and employers and distinguish among workers based on occupation and/or industry. Plaintiffs' equal protection claim is not subject to heightened scrutiny because no suspect classification is at issue (which Plaintiffs do not contest), and it fails under rational basis review.

Contrary to Plaintiffs' repeated assertions, no aspect of AB 5 "bans" speech of any type. (ECF No. 37 at 13-14.) If a particular occupation or industry does not meet the requirements for an exemption, the only consequence is that workers in that occupation (or workers in that industry) are subject to the ABC test for purposes of worker classification and application of California's labor laws. Even assuming *arguendo* that a burden is imposed on the speech of some occupations more than other occupations, the relative burden is based solely on the occupation, not on the content of any speech. Plaintiffs thus fail to demonstrate that this result

constitutes discrimination based on speech. Because Plaintiffs' claims fail as a matter of law, the Court should dismiss the Complaint.

## ARGUMENT

### I. PLAINTIFFS' FIRST AMENDMENT CLAIM FAILS.

#### A. AB 5's Challenged Exemptions Distinguish Among Workers Based on Their Occupation and Industry, Not the Content of Their Speech.

Plaintiffs challenge the 35-submission limit and the videography limitation to two exemptions from the ABC test, claiming that they violate their First Amendment rights because other occupations are not subject to these limitations in order to qualify for an exemption. But these limits do not discriminate against speech at all, much less constitute content-based restrictions. Plaintiffs respond that the challenged exemptions are content-based because "[t]he only way to know how AB 5 applies to anything a freelancer produces is to read the freelancer's writing (or view his photographs and videos) to determine the 'function or the purpose' of the speech." (ECF No. 37 at 12, 16.)

Plaintiffs are wrong on the facts and the law. The exemption from the ABC test at issue instead hinges on *occupation*, i.e., on whether the worker providing the service is a still photographer, photojournalist, freelance writer, editor, or newspaper cartoonist. Cal. Lab. Code § 2750.3(c)(2)(B)(ix) & (x). The statutory language does not reference, favor, or disfavor any subject matter, idea, or viewpoint. The challenge to the videography exclusion likewise fails because the distinction drawn is based on industry—that is, on whether an individual "works on motion pictures" and other similar projects in a wide range of media; the exclusion does not hinge on the content of the message, or the viewpoint of the speaker. *See, e.g., Recycle for Change v. City of Oakland*, 856 F.3d 666, 670 (9th Cir. 2017) ("A content-based law is one that targets speech based on its communicative content or applies to particular speech because of the topic discussed or the idea or message expressed.") (citation omitted). As the U.S. Supreme Court has explained, "a

speech regulation is content based if the law applies to particular speech because of the topic discussed or the idea or message conveyed." *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2231 (2015); *Turner Broad. Sys. v. FCC*, 512 U.S. 512 U.S. 622, 643 (1994). The case law rejects First Amendment challenges where "the [challenged] exemption is plainly 'speaker-based,' not content-based." *Hampsmire v. City of Santa Cruz*, 899 F. Supp. 2d 922, 931 (N.D. Cal. 2012).

Plaintiffs argue that the "occupational classification" of "a particular kind of writer or photographer cannot be divorced from the content they produce" (ECF No. 37 at 15), but cite no legal support for this broad proposition. In fact, the Supreme Court has squarely rejected Plaintiffs' argument "that the First Amendment mandates strict scrutiny for any speech regulation that applies to one medium (or a subset thereof) but not others." *Turner Broadcasting Sys.*, 512 U.S. at 660. "[T]he fact that a law singles out a certain medium, or even the press as a whole, 'is insufficient by itself to raise First Amendment concerns." *Id.* (*quoting Leathers v. Medlock*, 499 U.S. 439, 452 (1991)).

Plaintiffs also mistakenly insist that a regulation is content-based any time that an individual's work has to be read in order to ascertain whether it is covered by the regulation.[1] (ECF No. 37 at 12, 16.) The Ninth Circuit has rejected such a wholesale rule. While courts have used this "enforcing officer" test in explaining why a law is content-based, the Ninth Circuit and the Supreme Court "have also cautioned that an officer's inspection of a speaker's message is not dispositive on the question of content neutrality." *Recycle for Change*, 856 F.3d at 671. In other words, heightened scrutiny does not apply here merely because a government official might have to read content to ascertain if one of the occupational exemptions applies. "[T]hat an officer must inspect a [plaintiff's] message to

---

[1] Plaintiffs focus on language from *Reed* regarding the first step in the applicable analysis—"determining whether the law is content neutral on its face"—but do not point to any aspect of AB 5 (and specifically the challenged limitations on its exemptions) that hinges on the *content* of any speech. (ECF No. 37 at 14-15, *quoting Reed*, 135 S. Ct. at 2228.).

3

determine whether it is subject to the [challenged law] does not render [it] *per se* content based." *Id.* at 670; *see Hill v. Colorado*, 530 U.S. 703, 721 (2000) ("We have never held, or suggested, that it is improper to look at the content of an oral or written statement in order to determine whether a rule of law applies to a course of conduct."). "The 'officer must read it' tests cuts too broadly if used 'as a bellwether of content. If applied without common sense, this principle would mean that every sign, except a blank sign, would be content based." *Recycle for Change*, 856 F.3d at 671 (citation omitted).

Plaintiffs make no attempt to distinguish or even address these cases. (ECF No. 37 at 14-17.) Instead, they contend that the motion to dismiss "confuse[s] the distinction between viewpoint-based and content-based laws." (*Id.* at 8.) But the argument in the motion to dismiss did not rest on cases involving viewpoint-based laws; the authority cited also involved content-based challenges. *See Hampsmire*, 899 F. Supp. 2d at 930 ("As an initial matter, there is no evidence that plaintiff was arrested based on the content of his speech."); *G.K. Ltd. Travel*, 436 F.3d at 1077 ("That the law affects plaintiffs more than other speakers does not, in itself, make the law content based."). Like the statute at issue in *Doe*, AB 5 is content neutral because "[o]n its face, [it] makes no reference to specific subject matters or viewpoints." *Doe v. Harris*, 772 F.3d 563, 575 (9th Cir. 2014).

**B. AB 5 Is a Law Governing Employment Generally Instead of Speech, and Thus Raises No First Amendment Concerns.**

In the motion to dismiss, Defendants explained that Plaintiffs' First Amendment challenge fails because AB 5 is content neutral, the law can be justified without reference to the content of the regulated message, and there is no evidence that it was adopted to favor or disfavor any message conveyed. (ECF No. 33-1 at 18-20, *citing U.S. v. Swisher*, 811 F.3d 299 (9th Cir. 2016) (en banc), and *Recycle for Change*, 856 F.3d 666.) Plaintiffs' opposition does not grapple with this argument and supporting case law. (ECF No. 37 at 20.)

4

1          The Ninth Circuit has held that "generally applicable economic regulations *affecting* rather than *targeting* news publications" pass constitutional muster. *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 896 (9th Cir. 2018) (emphasis added).  At issue there was a generally applicable wage law targeting employer use of employee wages, rather than singling out particular entities or speech. *Id.* at 895. As the Supreme Court has pointed out, "the States and the Federal Government can subject newspapers to generally applicable economic regulations without creating constitutional problems." *Minneapolis Star & Tribune Co. v. Minn. Com'r of Revenue*, 460 U.S. 575, 581 (1983).  Ultimately, in the context of laws that burden speech but do not ban it, the applicable test is "whether the speech-burdening restrictions 'are *justified* without reference to the content of the regulated speech." *Doe*, 772 F.3d at 575 (emphasis in original).  That test is met here, because the exemptions from the ABC test are based on a worker's occupation, not the content of the worker's speech.

           Plaintiffs misplace reliance on *Minneapolis Star & Tribune* and *Arkansas Writers' Project*.  (ECF No. 37 at 19.)  These cases are consistent with the analysis above that a challenger must show either that the regulation is content-based on its face, or that some other aspect demonstrates an intent to suppress speech.  "The taxes invalidated in *Minneapolis Star* and *Arkansas Writers' Project* . . . targeted a small number of speakers, and thus threatened to 'distort the market for ideas.'" *Turner Broadcasting Sys.*, 512 U.S. at 660.  Distinguishing these cases, the Court explained that "[a]lthough there was no evidence that an illicit governmental motive was behind either of the taxes, both were structured in a manner that raised suspicions that their objective was, in fact, the suppression of certain ideas." *Id.* By contrast, Plaintiffs here point to no facts raising a similar inference that AB 5's aim is actually the suppression of ideas. *Swisher*, 811 F.3d at 313.

           Because, as explained above and in the motion to dismiss, AB 5 is a labor law of general application, unrelated to speech, there is no viable First Amendment

5

1  claim.  *Turner Broadcasting Sys.*, 512 U.S. at 658; *Reed*, 135 S. Ct. at 2231.  The
2  Complaint does not demonstrate that the challenged limitations reveal a content
3  preference, or that they otherwise "cannot be justified without reference to the
4  content of the regulated speech," or that the Legislature adopted them "because of
5  disagreement with the message" they convey.  *Swisher*, 811 F.3d at 313.  AB 5 is a
6  law of general applicability that does not hinge on content, serves important
7  government interests unrelated to the suppression of speech, and there is no
8  evidence that it was adopted to favor or disfavor any message conveyed.  *Recycle*
9  *for Change*, 856 F.3d at 670; *see also Interpipe Contracting, Inc.*, 898 F.3d at 896.
10  Accordingly, Plaintiffs' First Amendment challenge fails.

## II.  PLAINTIFFS' EQUAL PROTECTION CLAIM FAILS.

Plaintiffs' equal protection claim also fails, under applicable rational basis review.  The challenged statutory exemptions meet this standard.

Plaintiffs place undue reliance on *Merrifield v. Lockyer*, 547 F.3d 978 (9th Cir. 2008).  (ECF No. 37 at 17.)  That case "presented a unique set of facts," where an exemption in the challenged licensing scheme *contradicted* the interest put forth to support it: although the state argued that the scheme was necessary to address public health concerns about exposure to pesticide, it exempted pest-control operators who were "*more* at risk of being exposed to pesticides . . . than similarly-situated operators."  *Allied Concrete & Supply Co. v. Baker*, 904 F.3d 1053, 1065 (9th Cir. 2018).  By contrast, Plaintiffs point to no "similarly-situated" entities who are exempt from AB 5 in a way that contradicts the statute's purpose.  *See Olson v. California*, Case No. CV 19-10956-DMG (RAOx), 2020 WL 905572, at \*7 (C.D. Cal. Feb. 10, 2020) (determining *Merrifield* did not apply in AB 5 challenge because "Plaintiffs have not shown that their work arrangements are so similar to exempted work arrangements").  Although they claim that "similar 'professional services'" are treated differently, that argument presupposes that the other

6

occupations are similarly situated relative to the purpose of the statutory scheme (ECF No. 37 at 17), which is incorrect.

Plaintiffs argue "[t]hat freelance journalists and freelance marketing writers are similarly situated for purposes of equal protection should require little explanation," (ECF No. 37 at 18), but it is their burden to establish this threshold element as part of their equal protection claim. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166-67 (9th Cir. 2005); *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013). And although they contend that these groups "are often the same person," they do not explain why the groups are similarly situated for purposes of AB 5—that is, that they are similarly situated *vis à vis* the misclassification concerns animating the statute. *Safeway Inc. v. City & Cty. of San Francisco*, 797 F. Supp. 2d 964, 972-72 (N.D. Cal. 2011) ("If the groups are not similarly situated for purposes of the law at issue, an equal protection claim fails."); *see Corp. of the Catholic Archbishop of Seattle v. City of Seattle*, 28 F. Supp. 3d 1163, 1167 (W.D. Wash. 2014) (In context of the Religious Land Use and Institutionalized Persons Act, noting that "[W]e look to see if the church is 'similarly situated as to the regulatory purpose'"). Here, the Legislature could have reasonably concluded that a 35-submission limit was not warranted for other occupations because misclassification was less likely for that group. (Bill Analysis, Senate Committee on Labor Employment and Retirement 7/8/19 at pp. 8-10, https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201920200AB5 [last visited Jan. 24, 2020] (discussing factors taken into account regarding the exemptions).) Plaintiffs cannot state an equal protection claim by "conflating all persons not injured into a preferred class receiving better treatment" than them. *Thornton*, 425 F.3d at 1167.

Plaintiffs also argue that "speculation about what the legislature 'could have reasonably concluded'" in distinguishing between the categories of exemptions from the ABC test "is entirely inappropriate at the motion to dismiss stage," and

that this Court must instead accept the Complaint's allegations as true. (ECF No. 37 at 18.) In so arguing, Plaintiffs rely on *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1151 (C.D. Cal. 2003), but that case arose in the context of a motion to dismiss a claim based on res judicata. A different rule applies in cases involving rational basis analysis. *HSH, Inc. v. City of El Cajon*, 44 F. Supp. 3d 996, 1008 (S.D. Cal. 2014). "In applying the rational basis test at the motion to dismiss stage, a court may go beyond the pleadings to hypothesize a legitimate governmental purpose." *Id.* Under this standard, courts must "uphold a governmental classification 'if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Hood Canal Sand and Gravel, LLC v. Brady*, 129 F. Supp. 3d 1118, 1126 (W.D. Wash. 2015), *citing Beach Communications, Inc.*, 508 U.S. at 313. "The government also has no obligation to provide evidence to sustain the rationality of the classification," and "the burden is on the plaintiff 'to negative every conceivable basis which might support' the classification." *Id.*; *Heller v. Doe*, 509 U.S. 312, 320 (1993) ("A State, moreover, has no obligation to produce evidence to sustain the rationality of a statutory classification."). Indeed, to challenge the exemptions on equal protection grounds, Plaintiffs have the burden to "negate 'every conceivable basis' which might have supported the distinction" made between covered occupations and those that are exempted. *Angelotti Chiropractic v. Baker*, 791 F.3d 1075, 1086 (9th Cir. 2015) (quoting *Armour v. City of Indianapolis*, 132 S. Ct. 2073, 2080-81 (2012)); *see also Olson*, 2020 WL 905572, at \*\*7-8 (rejecting equal protection challenge to AB 5 where Plaintiffs failed to "negat[e] every conceivable basis for AB 5's exemptions"). Plaintiffs fail to do so.[2]

---

[2] Plaintiffs argue that Defendant cannot meet strict scrutiny at the motion to dismiss stage. (ECF No. 37 at 19.) But because there is no suspect classification alleged and AB 5 does not implicate First Amendment rights, the claims are not subject to strict scrutiny. "Although the Court has on occasion applied strict scrutiny in examining equal protection challenges in cases involving First Amendment rights, it has done so only when a First Amendment analysis would

# CONCLUSION

For these reasons, the Court should dismiss the Complaint.

Dated:  March 9, 2020

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
TAMAR PACHTER
Supervising Deputy Attorney General

/s/ *Jose A. Zelidon-Zepeda*
JOSE A. ZELIDON-ZEPEDA
Deputy Attorney General
*Attorneys for Attorney General Xavier Becerra, in his official capacity*

SA2019106422
21846625.docx

---

have itself required such scrutiny." *Wagner v. Federal Election Comm'n*, 793 F.3d 1, 32 (D.C. Cir. 2015); *see Police Department of City of Chicago v. Mosley*, 408 U.S. 92 (1972); *Carey v. Brown*, 447 U.S. 455 (1980).